**STERLING DRUG INC., Winthrop Products Inc., and Breon Laboratories, Inc., Plaintiffs,**

*v.*

**Patricia R. HARRIS, Secretary of Health, Education and Welfare, Sherwin Gardner, Acting Commissioner of Food and Drugs, Food and Drug Administration and Department of Health, Education and Welfare, Defendants.**

No. 79 Civ. 4899 (CES).

United States District Court, S. D. New York.

Jan. 7, 1980.

James Swire, Rogers, Hoge & Hills, New York City, for plaintiffs.

Robert Fiske, U. S. Atty., New York City, for defendants; Susan Campbell, Asst. U. S. Atty., New York City, of counsel.

## MEMORANDUM DECISION

STEWART, District Judge:

This case presents the question of the scope of Exemption b(5) of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (1966). Plaintiffs brought this action under FOIA to compel the production of documents sought in connection with litigation concerning the Food and Drug Administration's ("FDA") proposal to withdraw approval of the New Drug Application ("NDA") for plaintiffs' prescription drug Alevaire.[1] The FDA has refused to disclose the requested documents, claiming that they are inter- or intra-agency memoranda that would not be available to a private party in litigation with the agency, and therefore are exempt under Exemption b(5).

## BACKGROUND

The NDA for Alevaire was first approved in 1952, based on evidence that the drug was safe. In 1962, Congress amended the Federal Food, Drug, and Cosmetic Act to require proof of effectiveness as well as safety for approval of a NDA. FDA then began a review of pre-1962 approved drugs to determine the adequacy of proof of effectiveness.[2]

After the study of Alevaire was completed, the agency began its "Drug Efficacy Study" review process, which included the preparation of statistical, medical and pharmacological reviews of the NDA. Based in part on these reviews, together with the report of the National Academy of Sciences and National Research Council[3] and FDA policy considerations, the agency undertook to institute proceedings to withdraw approval of the NDA for the drug Alevaire. Thus began the now eleven year old process, described in some detail in *Sterling Drug v. Weinberger*, 503 F.2d 675 (2d Cir. 1974), of determining whether there was a lack of substantial evidence based on adequate and controlled studies that the drug was effective.[4]

The withdrawal proceeding now in progress before the FDA, for which the plaintiffs seek the documents at issue here, was instituted in March of 1979, when the FDA published a notice of hearing of their proposal to withdraw approval of the NDA for Alevaire. In May of 1979, a hearing was commenced before an Administrative Law Judge. In the course of that proceeding, the FDA filed about 300 documents in the public record, pursuant to the applicable FDA discovery regulation, 21 C.F.R. § 12.-

1. Alevaire is an evacuant solution used by patients who are suffering from lung disorders to loosen and facilitate the removal of respiratory secretions which interfere with the respiratory process.

2. The Federal Food, Drug, and Cosmetic Act and applicable regulations provide that before a drug can be shipped in interstate commerce, the sponsor of the drug must secure approval from FDA of a New Drug Application (NDA). The sponsor submits reports of investigations which have been made to show whether or not the drug is safe and effective. An NDA is reviewed by professionals of at least three scientific disciplines. The recommendations of individual members of the review team are reviewed by supervisory personnel and the director of the division to which the application

is assigned. The Associate Director for New Drug Applications then decides whether to approve the drug, or if the drug has already been approved, whether to withdraw approval or require changes in labelling. *See* 21 C.F.R. § 310.300; aff. of Jerome A. Halperin.

3. For drugs approved prior to 1962, the FDA obtained the assistance of the National Academy of Sciences/National Research Council, contracting with that body to perform "Drug Efficacy Studies".

4. There has been some confusion within the agency over the appropriate standard to be used for testing the effectiveness of the drug, *see Sterling Drug v. Weinberger, supra.*

85.[5] The agency withheld a number of documents which were claimed to be properly excluded as privileged communications and secret, classified material. Plaintiffs, claiming that these documents are at the heart of the litigation before the Administrative Law Judge, moved for their production. The ALJ denied the motion, stating, however, that he thought that the plaintiffs were entitled to the documents and should pursue their remedies under FOIA.

Plaintiffs had already filed a request under FOIA to obtain the documents withheld by the agency, which included all of the FDA's internal scientific and medical reviews concerning Alevaire. The agency produced some additional documents, but finally withheld disclosure of 85 documents in their entirety and deleted portions of 7 documents.

Plaintiffs then brought this action and moved by order to show cause, seeking a *de novo* review of their FOIA claim and requesting immediate injunctive relief or a stay of the administrative proceeding pending a decision of their FOIA claim. A hearing was held on September 21, 1979, at which plaintiffs' motion for a stay and a preliminary injunction was denied. The Government informed the Court that it was in the process of itemizing and categorizing the documents, in accordance with the procedures set forth in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). Decision on plaintiffs' request for an *in camera* review of the documents was reserved pending a determination of the adequacy of the index submitted by the Government. On October 22, 1979, the Government submitted an index of the documents in question and affidavits of various agency personnel concerning the circumstances surrounding the preparation of the documents, and then filed a motion for summary judgment, claiming

that plaintiffs failed to exhaust their administrative remedies and the documents are exempt from disclosure under Exemption b(5) of FOIA.[6]

*Exhaustion of Administrative Remedies*

■ Defendants contend that plaintiffs' failure to appeal the Administrative Law Judge's denial of their discovery motion constitutes failure to exhaust their administrative remedies. We do not agree. The legislative history, implementing regulations, and the statute itself reflect Congress' intention to avoid delay in processing claims under FOIA. *See, e. g., Information Acquisition v. Department of Justice*, 444 F.Supp. 458, 462 (D.D.C.1978); 5 U.S.C. § 552(a)(6)(C) (Supp. V. 1975). The statute states: "Any person making a request to any agency for records . . . shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph." *Id.* Here, HEW failed to respond to plaintiffs' FOIA request within the twenty-day limit set forth in 45 C.F.R. § 5.85, the applicable agency regulation. Therefore, plaintiffs are deemed to have exhausted their administrative remedies.

Defendants also moved for summary judgment as to the individual defendants Harris and Gardner. This motion is also without merit. The cases relied on by defendants in support of their motion are concerned with providing adequate notice to the agency and its responsible officials, *see Ott v. Levi*, 419 F.Supp. 750 (E.D.Mo. 1976), and no other bases for this motion have been shown. Therefore, defendants' motion is denied as to the individual defendants. *Accord, American Airlines, Inc. v. National Mediation Board*, 453 F.Supp. 430 (S.D.N.Y.1978).

---

**5.** That provision directs that, before the notice of hearing is published, the director of the bureau responsible for the matters involved in the hearing shall submit to the Hearing Officer "(2) All documents in his files containing factual data and information, whether favorable or unfavorable to his position, which relates to the issues involved in the hearing." 21 C.F.R. § 12.85(a).

**6.** The Government also withheld documents based on Exemption 6 of FOIA. Plaintiffs have waived their request for production of the documents to which the claim was asserted, so this exemption is no longer at issue here.

## EXEMPTION 5

### The Documents

The documents at issue can be grouped into four categories. First, documents 1–9 and 11–16 consist primarily of summaries and medical, statistical and pharmacological reviews, which were prepared by the agency in the course of their on-going review of NDA's. Second, documents 10, 18–20, 22–23, 25, 29–31, 41, 74–78, 80–83, and deleted portions of 90–93 consist of communications and recommendations of administrators and their assistants concerning the withdrawal of the approval of the NDA for Alevaire. Third, documents 17, 21, 24, 27, 28, the first page of 32, 33–40, 42–73 and 91 consist of experts' reviews, reports and memoranda, prepared at the request of the legal staff or by the legal staff themselves in preparation for the hearings involving Alevaire. Fourth, documents 17, 21, 24, 42, 71, 72, 79, 84 and 85 consist of communications between legal counsel and agency management concerning the Alevaire litigation.

Plaintiffs concede that documents 38–40, 51, 58–63, 65–68, 70 and 73 are exempt under the work product privilege or attorney-client privilege, and waive their request for documents 86–89. As to the remaining documents, plaintiffs contend that these documents are purely factual and scientific reports which are not protected from disclosure under Exemption b(5), and therefore must be produced pursuant to 5 U.S.C. § 552(a)(2).[7] The defendants claim that the documents constitute discussions, evaluations, opinions and recommendations within the NDA approval and continuing review process and are thus exempt from disclosure under 5 U.S.C. § 552 b(5). They further claim that documents 21, 24, 27–40, 42–73, 82 and 91 are exempt under the work product privilege, documents 17, 21, 24, 38, 51, 70–72, 79 and 84–85 are attorney-client communications and therefore exempt from disclosure.

### The Law

■ Exemption 5 of the Freedom of Information Act provides that FOIA's disclosure requirements do not apply to matters that are "inter-agency or intra-agency memoranda or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552 b(5). This exemption, which has been narrowly construed in accordance with the policy of broad disclosure under FOIA, has been interpreted by the Supreme Court to include the attorney-client privilege, see *Federal Open Market Committee of Federal Reserve System v. Merrill*, 443 U.S. 340, 99 S.Ct. 2800, 61 L.Ed.2d 587 (1979); *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 154, 95 S.Ct. 1504, 1518, 44 L.Ed.2d 29 (1975), the work product privilege, see *N.L.R.B. v. Sears, Roebuck & Co., supra*, and the executive privilege, see *Merrill, supra*; *Renegotiation Board v. Grumman Aircraft Engineering Corp.*, 421 U.S. 168, 184, 95 S.Ct. 1491, 1500, 44 L.Ed.2d 57 (1975). The exemption was enacted to encourage "open, frank discussion between subordinates and chief concerning . . . legal and policy matters." *E.P.A. v. Mink*, 410 U.S. 73, 87, 93 S.Ct. 827, 836–837, 35 L.Ed.2d 119 (1972). In *Mink*, the court held that materials reflecting deliberative or policy-making processes were exempt from disclosure, while purely factual, investigative matters must be produced, unless they are inextricably intertwined with policy-making recommendations so that their disclosure would compromise the confidentiality of deliberative information that is entitled to protection under Exemption 5. *E.P.A. v. Mink*, 410 U.S. at 92, 93 S.Ct. at 838.

### In Camera Review

■ We are thus faced with the difficult task of deciding whether the documents in question consist of attorney-client communication, work product and/or policy deliberations which are exempt from disclosure or whether they are factual, scientific or

---

7. Plaintiffs have expressed particular interest in the reviews prepared by FDA, documents 1–37, 41, 53 and 54.

investigative material which must be produced. At the outset, it must be determined whether an *in camera* review of the documents requested by plaintiffs is necessary. In *Lead Industries Association, Inc. v. Occupational Safety and Health Administration,* 610 F.2d 70 (2d Cir. 1979), the Court of Appeals found that it was error for the District Court to hold an *in camera* review of documents pursuant to a FOIA motion, particularly without a hearing on the issue. The Court held that an *in camera* review was warranted only " 'where the record is vague or the agency claims too sweeping or suggestive of bad faith.' " *Id.* at 88 (citations omitted).

In accordance with the decision in *Lead Industries,* a conference was held on December 7, 1979, at which the necessity of an *in camera* review was discussed. Plaintiffs pointed out several inconsistencies and inadequacies in the index and affidavits prepared by the defendants.[8] We then followed the procedure suggested in *E.P.A. v. Mink, supra,* 410 U.S. at 91, 93 S.Ct. at 837, namely selecting several representative documents for inspection, and discovered that the descriptions were not sufficiently accurate to enable us to establish to our satisfaction that the documents fell clearly within the exempted category. *See E.P.A. v. Mink, supra.*[9] Although we are convinced of the Government's good faith in preparing the index and affidavits, we find that an *in camera* review was necessary in this case to determine whether the documents should be disclosed in whole or in part.

*The Attorney-Client Privilege*

Plaintiffs do not dispute that documents consisting of attorney-client communications would not be available to a private party in litigation with the agency, and thus are exempt under b(5). They argue, however, that the individuals with whom the FDA attorneys communicated were not within the "control group" of the agency, as defined in *U. S. v. International Business Machines Corp.,* 66 F.R.D. 154, 198 (S.D.N. Y.1978), and therefore the attorney-client privilege does not apply. They further argue that the FDA has not shown the documents to meet the confidentiality requirements necessary to preserve the privilege.

█ We are not persuaded that these documents should be disclosed. Whether we apply the control group test or the more liberal "scope of employment" standard employed in *Harper & Row Publishers, Inc. v. Decker,* 423 F.2d 487, 491–92 (7th Cir. 1970), *aff'd per curiam by equally divided Court,* 400 U.S. 348, 91 S.Ct. 479, 27 L.Ed.2d 433 (1971), these communications fall within the scope of the attorney-client privilege. They consist of communications between legal staff and various officials within the agency with apparent decision-making responsibilities concerning the issues involved in the litigation over Alevaire.[10] The affidavit submitted by Eugene M. Pfeifer, staff attorney in the FDA Office of General Counsel, sufficiently establishes that the communication is privileged, and there is no reason to believe that the confidentiality of the documents was not preserved. Therefore, defendants' motion for summary judgment is granted with respect to documents 17, 21, 24, 42, 71, 72, 79, 84 and 85.

*The Work-Product Privilege*

█ The Government claims that documents 17, 21, 24, 27–40, 42–73, 82 and 91 are exempt from disclosure under the work

---

**8.** For example, there were documents for which the work product privilege was claimed in the index but not supported by the affidavits and vice versa.

**9.** This was not the case in *Lead Industries Association, Inc. v. Occupational Safety and Health Administration,* 610 F.2d 70 (2d Cir. 1979), where the Court noted that the Government submitted affidavits which on their face indicated that the documents fell within Exemption b(5), and detailed indices fully comply-

ing with the requirements of *Vaughn v. Rosen, supra,* which were strongly supportive of that claim.

**10.** For example, document 17 is from the Acting Director of the Bureau of Medicine to the General Counsel's office. The documents for which there may be a question as to the authority of the individual to speak for the agency, documents 38 and 40, are also exempt under the work product privilege, discussed in the next section.

product privilege as incorporated into Exemption 5.[11] This privilege protects "memoranda prepared by an attorney in contemplation of litigation which set forth the attorney's theory of the case and his litigation strategy." *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. at 154, 95 S.Ct. at 1518, *quoted in Associated Dry Goods Corp. v. N.L.R.B.*, 455 F.Supp. 802, 809 (S.D.N.Y. 1978). The privilege serves to protect the agency's pre-decisional processes involved in preparing for litigation.

Plaintiffs challenge the applicability of the work product privilege to the remaining documents. They argue: (1) that the documents prepared prior to the issuance of the Notice of Hearing in 1979 were not prepared in anticipation of litigation, but rather were routine scientific and medical reviews conducted for every NDA submitted; (2) that the documents were not prepared by an attorney or his agent; and (3) that the documents contain purely factual and scientific materials which can be segregated from the remainder of the document.

■ To qualify for work product protection, material must have been prepared "with an eye to litigation." *Mobil Oil Corp. v. F.T.C.*, 430 F.Supp. 855 (S.D.N.Y.1977). The privilege does not extend to routine reports prepared in the ordinary course of FDA business, *see Atlanta Coca-Cola Bottling Co. v. Transamerica Insurance Co.*, 61 F.R.D. 115, 118 (N.D.Ga.1972), for such a broad application would effectively insulate all of FDA's files from disclosure, contrary to "Congress' intent to protect only against disclosure of governmental policy-making processes." *Robbins Tire & Rubber Co. v. N.L.R.B.*, 563 F.2d 724 (5th Cir. 1977), *rev'd on other grounds*, 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978).

In this case, defendants' affidavits and the documents themselves indicate that the FDA contemplated actual litigation concerning the withdrawal of Alevaire sometime in early 1969. The affidavit of Jerome A. Halperin, Deputy Director of the Bureau of Drugs, FDA, indicates that sometime in 1969 a decision to publish a Notice of Opportunity for Hearing and Proposal to Withdraw Approval for Alevaire was made. This notice was published on December 6, 1969, 34 Fed.Reg. 19389. Document 17, dated March 6, 1969, from the Acting Director of the Bureau of Medicine to the General Counsel, specifically discusses the proposal to withdraw approval of the NDA for Alevaire. The document discusses the sufficiency of the evidence supporting conclusions concerning the drug. It is reasonable to conclude, then, that the litigation involving the withdrawal of approval of Alevaire, which has extended for over ten years, was first anticipated in early 1969, and that the work product privilege attached at that point.

■ This does not mean that all documents concerning Alevaire prepared by or for the agency since that time are privileged as work product. It must still be shown that the documents were prepared by or at the request of an attorney to prepare for the upcoming litigation. *Associated Dry Goods v. N.L.R.B., supra* ; *Mobil Oil Corp. v. F.T.C., supra*. Documents 29, part of 32 and 82 do not constitute work product of an attorney or his agent. Document 29 is communication between agency staff; document 32 is in effect two documents: the route slip is within the work product privilege, but the attached memorandum consists of communication among medical personnel, and is not work product. Document 82 consists of communication between two officials in FDA.[12]

■ Plaintiffs also take issue with the Government's assertion of the work product privilege as to those documents prepared by or at the request of Donald N. Kilburn, a

---

11. We note again that plaintiffs concede that documents 40, 51, 66, 70 and 73 are privileged under this exemption. They condition this acquiescence on proof that the confidentiality of the documents was maintained. We find that the affidavits submitted by the Government adequately support the intention to maintain their confidentiality.

12. These documents are exempt from disclosure under the executive privilege, discussed in the next section.

staff member of the Litigation and Recall Staff in the Office of the Associate Directorate for Compliance in the FDA. In April of 1976, Kilburn was assigned to assist in the preparation of the administrative hearing on FDA's proposal to withdraw approval of the NDA for Alevaire. The documents for which the work product privilege is asserted were "either generated by [Kilburn] in preparation for the hearing or were generated at the request of Kilburn or attorneys from the Office of General Counsel for purposes relevant to the administrative hearing." [13] The applicability of the work product rule as to those documents turns on whether Kilburn is an agent of an attorney within the meaning of rule 26(b)(3), Federal Rules of Civil Procedure, which protects "[all] documents . . . prepared in anticipation of litigation or for trial by or for another party or by or for that party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent)."

We find that Kilburn's position falls within the scope of Rule 26(b)(3). He works directly with the Office of General Counsel, and is responsible for coordinating the gathering of all scientific and factual evidence necessary for the hearing and identifying and contacting government witnesses. He is working under the supervision of the General Counsel's Office—the FDA's counsel in the litigation—to prepare for the Alevaire hearing, and documents generated by him in this capacity are subject to the work product privilege. *See Mead Data Central, Inc. v. U. S. Dept. of the Air Force*, 566 F.2d 242 (D.D. Cir. 1977); *Associated Dry Goods v. N.L.R.B., supra* (fact that field examiner was not an attorney did not detract from applicability of privilege).

■ The documents themselves, many of which refer to requests by the General Counsel's Office or Kilburn for reports to be used in preparing for the Alevaire hearing, provide further support for the conclusion that they are attorney work product. The documents reflect discussions between and recommendations of agency staff and litigation staff concerning the conduct of the case. Some of the documents, such as document 27, are reports of experts responding to requests for summaries, analysis and conclusions concerning the specific issues being litigated. Questions asked of, responses given by, and correspondence with expert consultants in communicating for litigation are within the work product privilege. *See Bristol Myers Co. v. F.T.C.*, 598 F.2d 18 (D.C. Cir. 1978).[14]

Plaintiffs assert that, even if the documents are found to qualify for the work product privilege, portions of the documents consist of purely factual and scientific materials and are not exempt under Exemption 5. *See U. S. v. J. B. Williams Co., Inc.*, 402 F.Supp. 796 (S.D.N.Y.1975). They propose that the Court segregate the factual material from that which is exempt under the work product privilege, and order the defendants to disclose the non-exempt segments. The Supreme Court has held that low level, routine, factual reports that are severable from the private remainders of the document must be produced. *See E.P.A. v. Mink*, 410 U.S. at 91, 93 S.Ct. at 837, and this principle has been applied in this circuit in cases invoking Exemption 5 and the work product privilege. *See Associated Dry Goods v. N.L.R.B., supra; Linker v. Hills*, 453 F.Supp. 556 (S.D.N.Y.1978).

■ The appropriateness of attempting to segregate and order disclosure of purely factual material from otherwise exempt documents must be considered in light of the recent decision in *Lead Industries Association, Inc. v. OSHA, supra*. There the

---

**13.** Plaintiffs take issue with defendants' reliance on the Kilburn affidavit because his involvement with the case did not begin until April of 1976. However, all of the documents were communications with the General Counsel's office or prepared since Kilburn assumed his role in the case.

**14.** Plaintiffs claim that documents 64 and 65 must be produced pursuant to Rule 26(b)(4)(A)(i), Federal Rules of Civil Procedure. This rule requires disclosure of experts' facts and opinions only upon a showing of exceptional circumstances, which do not exist here.

**1028**

Court of Appeals held that if the proportion of nonexempt factual material is relatively small and is so interspersed with exempt material that separation is an inordinate burden, the material is exempt because it is not reasonably segregable. *Id.* at 150. The District Court is to take into account the nature of the document as a whole and the document's relation to the administrative process. *Id.*

Here, the documents in question were written in preparation for the conduct of the withdrawal proceedings. Experts were requested to organize the material in the reviews that was germane to the hearing, to draw inferences and to weigh the evidence submitted in support of the sponsors' position. For example, document 33 isolates quotations which bear on the agency's position in the Alevaire hearing from literature references already available to plaintiffs and comments on their importance in evaluating Alevaire. Document 30 consists of a discussion between Kilburn and a medical expert concerning the appropriate agency process for evaluating an NDA.[15] By evaluating the strength of various positions and focusing attention on portions of the data which is or will be available to plaintiffs as a result of this litigation, the summaries and analyses of earlier reviews by the agency and data submitted by plaintiffs reveal the deliberative process that Exemption 5 was designed to protect from disclosure. Although there may be "a few nuggets of non-intertwined, . . . factual information, *Lead Industries, supra,* this information is or will be available to plaintiffs as a result of our order, and the remaining non-exempt material "is so interspersed . . . that separation . . . [is] an inordinate burden." *Id.* We note that the segments of factual material which could be segregated would be of little use to the plaintiff. Therefore, defendants' motion for summary judgment is granted with respect to documents 17, 21, 24, 27, 28, the first page of 32, 33–40, 42–73 and 91.

*The Executive Privilege*

 The Government relies on a claim of executive privilege as the basis for non-disclosure of all of the requested documents. This privilege, which can be traced to *U. S. v. Morgan,* 313 U.S. 409, 422, 61 S.Ct. 999, 1004, 85 L.Ed. 1429 (1940), is designed to protect the integrity of the administrative process by limiting inquiry into the process by which agency decisions are made. By incorporating the executive privilege into Exemption 5, Congress intended to encourage the open and frank discussion between subordinates and chief. *E.P.A. v. Mink,* 410 U.S. at 87, 93 S.Ct. at 836. Materials consisting of recommendations or opinions concerning legal or policy matters may reveal the deliberative or policy-making process, and thus are exempt from disclosure. *Id.* at 89, 93 S.Ct. at 836; *Vaughn v. Rosen,* 523 F.2d 1136, 1145 (D.C. Cir. 1975). The court must determine whether production of the documents would be "injurious to the consultative functions of government that the privilege of nondisclosure protects." *E.P.A. v. Mink,* 410 U.S. at 87, 93 S.Ct. at 836. Purely factual, scientific and investigative material is generally available, *id.*

 Here, documents 1–9 and 11–16 consist of reviews performed by pharmacologists, physicians and statisticians concerning Alevaire.[16] These reports are routinely prepared on every NDA that is submitted. They are investigative, scientific reports which depend on the observation and expertise of the author, but none of them reflect the deliberative process of decision or policy-making. *Accord, Moore-McCormack Lines, Inc. v. I.T.O. Corp. of Baltimore,* 508 F.2d 945 (4th Cir. 1974); *Bristol Myers v. F.T.C.,* 424 F.2d 935 (D.C. Cir. 1970). The reports are factual analyses and descriptions performed by individuals in the course of performing their ongoing investigative

---

15. These documents would also be exempt under the executive privilege, which is discussed in the next section.

16. Exemption 5 is equally applicable to communications with outside consultants and agency staff, *Lead Industries Association, Inc. v. OSHA, supra,* so the status of the experts who submitted reports is not an issue in this case.

responsibilities. For example, document 3 is a literature report on animal testing, document 5 is an annual report, documents 6 and 7 are field reports, and document 14 is a statistical review of three papers on the mucoevacuant properties of Alevaire. In contrast to the reports discussed earlier which were prepared at the request of counsel and their agents in anticipation of litigation and to the situation in *Lead Industries,* here the documents were routinely prepared as investigative factual reports and then reviewed and interpreted by advisors to the decision-maker in making recommendations to the Associate Commissioner. Aff. of Halperin at 2. They are not a direct part of the deliberative process in the manner necessary to fall within the privilege. *Vaughn v. Rosen,* 523 F.2d at 1145. To find otherwise would in effect insulate virtually every document prepared by the FDA from disclosure, and "go a long way toward undercutting the entire Freedom of Information Act." *Id.* at 1146.

We are further persuaded of the appropriateness of disclosure of these documents after considering them in light of the test set forth in *Mink* to determine whether documents should be withheld under Exemption b(5): are they "injurious to the consultative functions of government?" *E.P.A. v. Mink,* 410 U.S. at 87, 93 S.Ct. at 836. The Commissioner has stated in the preamble to the regulation defining the extent of confidentiality of information in NDA's, 21 C.F.R. § 314.14, that disclosure of internal reviews "will not harm the regulatory efforts of the agency, but indeed will serve to foster better public understanding of the internal discussion about scientific and medical issues that must always characterize an open and responsive regulatory agency." 39 Fed.Reg. 44602, 44635 (Dec. 24, 1974). Furthermore, the FDA regulations provide that, for NDA's approved prior to July 1, 1975, "internal agency records

that describe such data and information, e. g., a summary of basis for approval or internal reviews of data and information" shall be made available for public disclosure, 21 C.F.R. § 314.14(e)(2)(i).

Nor does this present a situation where the cooperation of the employees and consultants in preparing truthful reports depends on their expectation of confidentiality. *See Wu v. National Endowment for Humanities,* 460 F.2d 1030 (5th Cir. 1972); *Rabbit v. Dept. of Air Force,* 401 F.Supp. 1206 (S.D.N.Y.1974); *Reliable Transfer Co. v. U. S. A.,* 53 F.R.D. 24 (E.D.N.Y.1971). As we indicated above, the FDA routinely discloses reports akin to those at issue here, and in analogous cases similar reports have been disclosed, *see, e. g., Syntex Corp. v. Califano,* CCH Food Drug Cos. L.Rept. ¶ 38,221 (Transfer Binder, 1978–79) (D.D.C. Jan. 21, 1979). Confidentiality is not expected, nor does it appear to be essential to the forthright and thorough preparation of these reports. Indeed, disclosure may be more likely to enhance the quality and thoroughness of the investigations. Therefore, we find that documents 1–9 and 11–16 are not within Exemption 5 and must be disclosed.[17]

The objective, factual nature of the documents just discussed is highlighted when compared with those documents that do fall within the executive privilege exemption. In contrast to the descriptive presentation of data in the documents discussed above, documents 10, 22–23, 25, 29–31, 41, 74–78, 80–83 and deleted portions of 90–93 were clearly prepared as part of the process of deciding whether and how to bring proceedings to withdraw approval of Alevaire. They are either discussions between subordinates and superiors within the agency concerning the evidence and appropriate course of action or reports and memoranda prepared at the request of decision-makers and their aides to assist in the decision-mak-

17. Although the plaintiffs have not filed a cross motion for summary judgment, *sua sponte* award of summary judgment to the non-moving party is appropriate where there is no issue of material fact and the non-moving party is entitled to judgment as a matter of law, *Lowenschuss v. Kane,* 520 F.2d 255 (2d Cir. 1975).

ing process. As such, these documents are exempt from disclosure under b(5).[18]

*Conclusion*

In sum, defendants' motion for summary judgment is granted except as to documents 1–9 and 11–16, which defendants shall make available to plaintiffs.

SO ORDERED.

---

**18.** Segregation and disclosure of purely factual material from otherwise exempt documents is not appropriate here, for the reasons discussed in the prior section, pp. 1027–1028 *infra*.