**MIAMI VALLEY CARPENTERS DISTRICT COUNCIL PENSION FUND, et al., Plaintiffs,**

v.

**Albert G. SCHECKELHOFF, et al., Defendants.**

**No. C–3–86–223.**

United States District Court, S.D. Ohio, W.D.

Oct. 25, 1988.

264

John R. Doll, Logothetis & Pence, Dayton, Ohio, for plaintiffs.

Patrick K. Smith, Dayton, Ohio, Robert T. Dunlevey, Jr., Stephen A. Watring, Dayton, Ohio, for defendants.

OPINION AND DECISION DENYING DEFENDANTS' MOTION TO DISMISS OR STRIKE PLAINTIFFS' MOTION TO SHOW CAUSE

MICHAEL R. MERZ, United States Magistrate.

This case is before the Court upon Defendants' Motion to Dismiss/Strike Motion for Order to Show Cause and to Vacate Order to Show Cause; Defendants' Alternative Motion to Consolidate with Pending Action; Defendants' Alternative Motion to Vacate Hearing Before Magistrate or limit the Scope of Hearing to Findings of Fact to be Certified to the United States District Judge; Defendants' Motion for Attorney's Fees and Costs (Doc. # 18). In sum, Defendants contend that the United States Magistrate has no jurisdiction to hear the contempt matter presently pending. They also contend that, regardless of who hears it, there can be no contempt finding because they have not violated the consent judgment in this case.

Despite the caption of their motion, Defendants have not in fact claimed any attorney fees or costs in the body of the motion and that claim need not be addressed at

this time. The balance of the motion is not well taken for the reasons set forth in this opinion.

### MAGISTRATE JURISDICTION OF THE CONTEMPT PROCEEDING

Defendants argue the Magistrate is precluded from hearing the contempt proceeding by 28 U.S.C. § 636(e) which provides:

> (e) In a proceeding before a magistrate, any of the following acts or conduct shall constitute a contempt of the district court for the district wherein the magistrate is sitting: (1) disobedience or resistance to any lawful order, process, or writ; (2) misbehavior at a hearing or other proceeding, or so near the place thereof as to obstruct the same; (3) failure to produce, after having been ordered to do so, any pertinent document; (4) refusal to appear after having been subpenaed [subpoenaed] or, upon appearing, refusal to take the oath or affirmation as a witness, or, having taken the oath or affirmation, refusal to be examined according to law; or (5) any other act or conduct which if committed before a judge of the district court would constitute contempt of such court. Upon the commission of any such act or conduct, the magistrate shall forthwith certify the facts to a judge of the district court and may serve or cause to be served upon any person whose behavior is brought into question under this section an order requiring such person to appear before a judge of that court upon a day certain to show cause why he should not be adjudged in contempt by reason of the facts so certified. A judge of the district court shall thereupon, in a summary manner, hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before a judge of the court, or commit such person upon the conditions applicable in the case of defiance of the process of the district court or misconduct in the presence of a judge of that court.

Before considering whether this statute bars magistrate jurisdiction of the pending contempt matter, however, the Court must deal with a preliminary question. Defendants assert in their Memorandum in Support (Doc. # 18, p. 14, n. 5) that the question of magistrate contempt jurisdiction is sufficiently sensitive that it should be decided in the first instance by a District Judge who should exercise his power under Fed.R.Civ.P. 73(b) to withdraw the order of reference in this case on that question because of "extraordinary circumstances." This request is repeated in the Reply Memorandum (Doc. # 21, p. 12, n. 3).

This case was referred to the Magistrate by District Judge Weber. (Doc. # 4). As a practical matter, to obtain a decision of the District Judge on a motion to withdraw, Defendants would need to set that request forth in a separate motion and bring it to Judge Weber's attention, rather than make it in a footnote. The Magistrate has advised Defendants' counsel of this practical necessity and counsel have advised the Magistrate that they do not intend to file such a separate motion. Rather than ignore the request, I believe it should be addressed here.

Rule 73(b), which permits withdrawal of an order of reference made under § 636(c), merely repeats the statutory language at 28 U.S.C. § 636(c)(6). The question is whether there are "extraordinary circumstances" which merit a withdrawal. One possible use of this authority would be where a magistrate is disqualified under 28 U.S.C. § 144 or 455, but Defendants do not assert any facts which would give rise to disqualification. In fact they do not set forth any extraordinary circumstances at all. Their reliance is on the implicit proposition that it is sensitive to challenge a judicial officer's jurisdiction and therefore the challenged officer should not consider the matter in the first instance.

I do not believe that this constitutes the sort of extraordinary circumstance envisioned in the statute because it is not extraordinary for a judicial officer to decide questions of his or her court's jurisdiction in the first instance. Federal courts as

courts of limited jurisdiction are required to consider their own subject matter jurisdiction *sua sponte* and to dismiss a case, even on appeal, if jurisdiction is wanting. *Louisville & N.R. Co. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). Disqualification matters are even more sensitive, and yet it is clear that they are to be decided in the federal system in the first instance by the judicial officer sought to be disqualified. *In re Corrugated Container Antitrust Litigation*, 614 F.2d 958, 963 (5th Cir.1980), *cert. denied*, 449 U.S. 888, 101 S.Ct. 244, 66 L.Ed.2d 114 (1980). An assertion of jurisdiction by a magistrate is of course reviewable on appeal and, if improper, will result in reversal of a contempt adjudication. *United States v. Ritte*, 558 F.2d 926 (9th Cir.1977). Apart from appeal, the extraordinary writs of mandamus and prohibition are available to obtain appellate review of assertedly improper exercise of jurisdiction in the district courts. *See Roche v. Evaporated Milk Ass'n.*, 319 U.S. 21, 63 S.Ct. 938, 87 L.Ed. 1185 (1943). Magistrate consideration of the jurisdictional question in the first instance permits an opinion by a judicial officer most concerned and familiar with operation of the statute on a day-to-day basis without threatening the alleged contemnor with any loss of rights before reconsideration of the issue by an appellate court if necessary.

■ After considering the arguments of the parties, I am convinced it is proper for a magistrate in a case such as this to exercise contempt jurisdiction. Because the question is not plainly dealt with by precedent, it requires extensive discussion.

The order of reference in this case directed the magistrate to deal with pre-trial matters, whether dispositive or not, under 28 U.S.C. § 636(b) and further provided that the Magistrate could exercise full jurisdiction under § 636(c) to try the case and enter judgment if the parties consented. (Doc. # 4). Thereafter, counsel for all parties executed consent forms which read in full as follows:

The undersigned as a party to the above-captioned action pursuant to Fed.R.Civil P. 73(b), hereby consents to the exercise of civil jurisdiction in this case by United States Magistrate Michael R. Merz under 28 U.S.C. § 636(c). Such jurisdiction shall include all pre-trial matters, whether or not dispositive, trial, whether to the Court or by Jury, the entry of judgment, and any post-trial matters. I further consent that any appeal from the judgment of the United States Magistrate shall be to the United States Court of Appeals for the Sixth Circuit.

(Doc. ## 7, 8). Defendants do not now seek to revoke this consent, allege that it was in any way involuntary or uninformed, or assert that it was improperly induced by the Magistrate or District Judge.

Defendants do not assert that exercise of contempt jurisdiction by the Magistrate would be unconstitutional and indeed that issue is now firmly settled. *Bell & Beckwith v. United States*, 766 F.2d 910 (6th Cir.1985); *Pacemaker Diagnostic Clinic of America, Inc. v. Instromedix, Inc.*, 725 F.2d 537 (9th Cir.1984), *cert. denied*, 469 U.S. 824, 105 S.Ct. 100, 83 L.Ed.2d 45 (1984).

Finally, Defendants do not assert that the terms of their consent, which included "any post-trial matters," do not apply to the instant contempt proceedings. As noted below, these are civil contempt proceedings and civil contempt is one of the most common methods of enforcing an injunctive decree.

Defendants argument is limited to the statute, § 636(e), which Defendants claim prohibits exercise of contempt jurisdiction by a magistrate.

The Magistrates' Act was not adopted all at once in its present form. The original act, Pub.L. 90–578, 82 Stat. 1107, was the result of extensive hearings held in the United States Senate in 1966 and 1967. The thrust of the legislation was to create the magistrate system to replace the old United States Commissioner system, to require bar membership for the first time, and to expand the duties of the magistrates to assist district courts. The initial powers conferred were quite limited, including service as a special master under Rule 53,

assistance to district judges in conducting pretrial proceedings, and preliminary review of habeas corpus petitions. McCabe, The Federal Magistrate Act of 1979, 16 Harv.J. on Legis. 343, 349–50 (1979).

Section 636(e), then labeled § 636(d), was a part of the original 1968 Act. Its inclusion reflected the need to protect order in magistrate proceedings, as in all court proceedings, compromised by doubts about constitutionality of permitting magistrates, as non-Article III judges, to punish for contempt. The same debates reflect doubt over whether magistrates should be permitted to try criminal offenses over the petty offense level, a doubt resolved in favor of granting the authority.

The subsequent history of the Magistrates' Act is of amendments gradually increasing the scope of authority to meet both increased need in the district courts and increased confidence in the system which had been created. The Act was amended in 1976 (Pub.L. 94–577, 90 Stat. 2729) specifically to permit magistrates to conduct evidentiary hearings in habeas corpus cases and to hear Social Security appeals, along with additional duties. In so doing, Congress eliminated doubts about its intentions as to the breadth of the 1968 Act. *See Wingo v. Wedding*, 418 U.S. 461, 94 S.Ct. 2842, 41 L.Ed.2d 879 (1974), and *Mathews v. Weber*, 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976).

Finally, in 1979, 28 U.S.C. § 636(c) was added to the Act. In pertinent part it provides:

(c) Notwithstanding any provision of law to the contrary—(1) Upon the consent of the parties, a full-time United States magistrate ... may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court or courts he serves ...

Witnesses in Congressional hearings on the 1979 amendment virtually unanimously supported expansion of the civil jurisdiction in the manner eventually adopted. H.R. Rep. No. 95–1364, 95th Cong., 2d Sess. 9 (1978). The Judicial Conference of the United States in September, 1981, after studying the impact of the amendments, concluded that the system was working well and that magistrate jurisdiction should remain coextensive with that of the district courts. *Report of the Judicial Conference of the U.S. to the Congress on the Federal Magistrate System*, 39 (1981).

In light of this statutory history, I conclude that it is proper for me as a United States Magistrate to exercise jurisdiction over the contempt proceedings in this case.

Section 636(e) was adopted as part of the original Magistrates' Act at a time when there were serious doubts and confusion over what authority could constitutionally be granted to a United States Magistrate. It must be read *in pari materia* with § 636(c) which provides that "notwithstanding *any* provision of law to the contrary" magistrates may conduct "any or all proceedings" in a civil matter. While Congress did not specifically amend § 636(e) in 1979 (except to change the designation by adding (c) as an earlier subsection), there is no good reason to read an exception into the language of § 636(c) so that magistrates could conduct any proceeding except a contempt proceeding upon consent of the parties. The usual canon of statutory construction by which a later statute is held to repeal an earlier one with which it is in conflict is also available to support this conclusion, since subsection (c) was added eleven years after subsection (e) was first adopted.

The language of § 636(e) itself, apart from the impact of § 636(c), does not preclude the exercise of contempt jurisdiction here. The Supreme Court has been careful to distinguish between civil and criminal contempt on the basis of the nature of the relief granted; if the relief is coercive, the contempt is civil; if the relief is a determinate sentence and therefore punitive, the contempt is criminal. *Hicks v. Feiock*, 485 U.S. ——, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988). Measured against this distinction, § 636(e) appears to deal with criminal contempt. It provides that when a magistrate certifies facts allegedly constituting contempt, the district judge is to determine if

the conduct complained of "is such as to warrant *punishment* " and if so, *"punish* such person." (Emphasis supplied). This conclusion is not crystal clear, for § 636(e) also permits the district judge to "commit such person upon the conditions applicable in the case of defiance of the process of the district court," a provision for what looks like coercive imprisonment used for civil contempt. The conclusion that § 636(e) is about criminal contempt is reinforced, however, by the kinds of conduct mentioned as constituting contempt, largely acts of direct contempt tending to disrupt ongoing judicial proceedings and therefore acts usually dealt with by criminal contempt sanctions.

In contrast, the contempt asserted here is pure civil contempt. Defendants' asserted failure to comply with the consent judgment is contemptuous conduct directed at the other parties to this litigation, the Plaintiffs, and not at the Court; it is therefore appropriately classified as indirect contempt. *State, ex rel. Waller, v. Industrial Commission,* 44 Ohio L.Abs. 618, 620, 66 N.E.2d 148 (1944). Clearly, the relief sought by Plaintiffs is compensatory: further enforcement of the Consent Decree in this case and attorney fees and costs (Motion for Order to Show Cause, Doc. # 11, p. 4). Such civil contempt proceedings are common methods of enforcing consent injunctive relief. Wright and Miller, *Federal Practice and Procedure, Civil,* § 2960. Defendants explicitly consented to the use of civil contempt proceedings to enforce the judgment when they signed the Consent Judgment Entry (Doc. # 10, p. 2). Whatever may be said for limiting magistrate power to punish direct criminal contempts, § 636(e) does not prevent exercise of civil contempt jurisdiction in a full consent § 636(c) proceeding such as this one.

The authority relied upon by Defendants to the contrary is not convincing. Defendants cite *United States v. Ritte,* 558 F.2d 926 (9th Cir.1977). In that case a magistrate found a criminal defendant in contempt for breach of a bond condition and forfeited his bond. In a brief *per curiam* opinion, the Ninth Circuit vacated the contempt judgment on the basis of § 636(d) (as

it then was denominated). However, this opinion was handed down several years before adoption of § 636(c) and relates to a criminal contempt finding in a criminal case. It simply does not read on a magistrate's authority in a full consent action.

Defendants also rely on § 2.06 of Sinclair, *Practice Before Federal Magistrates,* (1988). Professor Sinclair, in the passage cited, does note that § 636(e) seems to require referral of contumacious conduct to a district judge. He admits that the statutory process is cumbersome and "appears to leave magistrate without immediate power to respond to contumacious conduct." *Id.* at 2–21. He notes that this approach parallels the reference of most contempts from the judge in front of whom they occur to another judge to permit a dispassionate evaluation of the need for a contempt sanction. This context makes it clear Professor Sinclair is thinking most of direct criminal contempts committed in the actual presence of the Court. But even these contempts need to be referred to another judge only when they involve personal vilification of the judge before whom they occur. *See, Offutt v. United States,* 348 U.S. 11, 75 S.Ct. 11, 99 L.Ed. 11 (1954). While I am unaware of any statistics on the matter, I doubt very many judges transfer post-judgment enforcement proceedings in civil contempt to other judicial officers for trial; there simply is no direct challenge to the person of the judge involved in these cases so as to draw in question the judge's impartiality.

In a section not quoted by defendants, Professor (former Magistrate) Sinclair supports this Magistrate's opinion about the impact of § 636(c) on § 636(e). He says:

When such [contumacious] conduct does occur in a *trial* [emphasis added] before a magistrate, it is unclear whether the restrictions of § 636(e) apply. On the one hand, the section appears unqualified, and it applies in all other aspects of the proceedings of court on which magistrate function. On the other hand, the party-consent on which § 636(c) case referrals rests is deemed to vest the magistrate with full trial judge powers, all

without constitutional defect. Hence, the argument could well be made that the parties have given greater powers to the magistrate than § 636(e) provides. *Id.* at 2–25. A stronger case than the present one for application of this argument can scarcely be imagined: here the Defendants consented both to magistrate jurisdiction of post-trial matters (Doc. # 8) and explicitly to the use of contempt proceedings to enforce the judgment. (Doc. # 10).

In sum, the Defendants' argument against magistrate civil contempt jurisdiction in this case is not well taken and is hereby overruled.

### MERITS OF DEFENDANTS' MOTION TO STRIKE

A. *The Consent Judgment Requires Contributions Under Two Collective Bargaining Agreements*

Defendants' Motion to Strike is based in the first instance upon an interpretation of the consent judgment entry.

Plaintiffs' Complaint herein was filed May 27, 1986, and based upon Exhibit 1 thereto, an agreement between the West Central Ohio Division, Carpenters' Employers Section of the Labor Relations Division, Ohio Building Chapter, Inc., Associated General Contractors of America on the one hand and the Miami Valley Carpenters District Council of Dayton, Ohio on the other hand (hereinafter referred to as the "General Agreement"). It is undisputed that Defendants were signatories to this General Agreement, which had a stated term of June 4, 1984 to midnight April 30, 1987.

Defendants were also signatories to another collective bargaining agreement negotiated by the same two parties (hereinafter the "Light Commercial Agreement") which was effective from November 9, 1983 through September 1, 1987. It is clear as Defendants assert that the Light Commercial Agreement did not form a basis for the complaint herein. However, after the complaint was filed and Plaintiffs commenced discovery, they conducted an audit which resulted in a report of December 15, 1986. The report showed that Defendants owed back contributions to each of the Plaintiff Pension Fund and Plaintiff Health and Welfare Fund under both agreements.

Thereafter, on January 28, 1987, the parties agreed to a consent judgment which became the judgment of this Court (Doc. # 10). The consent judgment entry provides that Plaintiffs were to be granted a judgment against Defendants for the amount set forth in the December 15, 1986, audit report plus attorney fees and costs. Defendants, however, were only to pay a portion of that judgment with the balance being waived, contingent upon Defendants' prompt payment of all future contributions due to the funds under the collective bargaining "agreement" between Defendants and the Miami Valley Carpenters District Council and any future collective bargaining agreements. The singular "agreement" is used both in the paragraph granting a judgment to the Plaintiff Pension Fund and in the paragraph granting a judgment to the Plaintiff Health and Welfare Fund. In the final paragraph of the consent judgment entry, it is provided:

"It is further agreed and consented to by the parties hereto that the Defendants are hereby enjoined to make all future payments to either the Health and Welfare Fund and Pension Fund within a 45 day grace period after the original due date for said contributions. If the Defendants fail to make said future contributions when due, or within the 45 day grace period, then said Defendants shall be subject to the contempt proceedings before this Court and shall also be responsible for making all of the remaining payments waived herein."

This last paragraph does not refer to any particular agreement as a basis for contributions, but merely enjoins the Defendants to make the contributions that are due.

Defendants argue strongly that the money now sought in the pending contempt proceedings is money due under the Light Commercial Agreement, which is not the agreement referenced in the consent judgment. Plaintiffs respond that the audit

report clearly included amounts due and owing under both the General Agreement and the Light Commercial Agreement. They further point to admissions of Defendant Albert Scheckelhoff on deposition that he knew the consent judgment required payments under the Light Commercial Agreement as well as the General Agreement.

■ Defendants rely on canons of interpretation requiring documents to be construed against their drafters (in this case, Plaintiffs' counsel) and authority requiring consent decrees to be enforced only in accordance with their "four corners." The Court disagrees with Defendants' interpretation. This is not a case where Plaintiff is seeking to obtain detailed contempt relief on an inherently ambiguous consent judgment entry. All parties to this litigation knew well before and at the time the consent judgment entry was signed that Defendants were liable under both the General Agreement and the Light Commercial Agreement. In effect, the Consent Judgment Entry is a confession of judgment under both of those agreements. The fact that the Plaintiffs did not undertake the formality of amending the complaint to conform with the evidence discovered during the audit is not material. Rule 15(b) would permit an amendment of the complaint even after judgment to conform to the evidence. Consent judgment decrees are essentially contracts between the parties, to be interpreted like contracts, and in this case the clear intent of the parties was to recognize the liability of Defendants under both agreements.

### B. *This Court's Jurisdiction is not Preempted by the NLRA.*

■ Defendants also argue that they are not liable for the contributions sought in these contempt proceedings because the agreements have expired. Plaintiffs respond by quoting the language of both the General Agreement and the Light Commercial Agreement to the effect that after their initial terms these agreements continue to remain in full force and effect from year to year thereafter unless either party

notifies the other in writing of its intention to terminate not less than 60 days prior to the expiration date or the yearly extension. There is no evidence that Defendant Scheckelhoff ever attempted to terminate these agreements prior to sending a written notice purporting to do that on February 26, 1988 (Scheckelhoff deposition, pp. 30–35). Defendants make no response to this argument in their Reply Memorandum and offer no evidence upon which the Court could conclude that these clauses are not effective or that, as a matter of law, they could not be effective.

This argument disposes of Defendants' claim that this Court lacks jurisdiction to determine whether contributions are required from Defendants after the expiration date of the two agreements. Defendants expected Plaintiffs to argue that, as a matter of National Labor Relations Act law as interpreted by the NLRB, contributions were required after contract expiration if the contract had not been terminated by either party. (Doc. 18, p. 9). This is not, however, the Plaintiffs' argument. The Court's consent judgment entry does not contemplate post contract contributions.

The opinion of the United States Supreme Court in *Laborers' Trust Fund v. Advanced Concrete*, 484 U.S. 539, 108 S.Ct. 830, 98 L.Ed.2d 936 (1988) is not to the contrary. There the Court held that a federal district court does not have jurisdiction to determine whether an employer's unilateral decision to refuse to make post contractual contributions violates the National Labor Relations Act, such a determination being reserved to the National Labor Relations Board. It also held that a trust fund's remedy under Sections 502(g)(2) and 515 of the Employment Retirement Income Security Act is limited to the collection of contributions based upon a contractual duty rather than any statutory duty under the NLRA. Were Plaintiffs here attempting to recover post contract contributions, *Laborers Trust* would bar our jurisdiction. However, Plaintiffs are only attempting to collect contributions due upon a contractual obligation, in this case a contractual obligation reinforced by the

mandatory injunctive authority of this Court.

Defendants' Motion to Dismiss or Strike is DENIED.

## DEFENDANTS' MOTION TO CONSOLIDATE

Defendants argue that because the Plaintiffs have filed a new action based upon the same allegations underlying the Motion for an Order to Show Cause, that matter must be consolidated with the new action. They allege that it would be contrary to efficient judicial administration to allow both matters to proceed simultaneously and because of common allegations, failure to consolidate would create a danger of inconsistent or duplicative results. They point out that the new case, (Civil Action C–3–88–383) had not been referred to the United States Magistrate at the time (September 12, 1988) at which they filed their Motion to Consolidate.

Actually, the new case (C–3–88–383) was referred to the United States Magistrate on August 5, 1988. (Doc. # 2). Of course, the parties have not, in that case, consented to Magistrate jurisdiction and the Magistrate cannot try that matter without such consent. However, based on the reasoning set forth in the first portion of this opinion, the Magistrate is of the opinion that he can try the contempt matter herein and, assuming Defendants are right about the identity of allegations in the two complaints, trial of the contempt matter may obviate any need to try the later filed case. While there appear to be common questions of law and fact between the two matters, consolidation at this point would substantially delay disposition of the contempt matter. In sum, no substantial judicial economy would be realized by consolidation and it is accordingly DENIED.