Michael Jeffrey **STOTTS**, Plaintiff,

v.

**J. Michael QUINLAN, (in his official capacity as Director of the Bureau of Prisons), Defendant.**

**No. 86–813–CRT–DE.**

United States District Court, E.D. North Carolina, Raleigh Division.

Oct. 25, 1991.

held liable even though there remain unresolved claims against the inactive Defendants.

Marvin Sparrow, N.C. Prisoner Legal Services, Raleigh, N.C., for plaintiff.

Stephen A. West, Asst. U.S. Atty., Raleigh, N.C., for defendant.

ALEXANDER B. DENSON, United States Magistrate Judge.

By judgment filed in this case on December 1, 1989 and amended on January 30, 1990, the undersigned, acting pursuant to 28 U.S.C. § 636(c), found the Bureau of Prisons policy regarding mail to federal prisoners from attorneys, courts, and government officials to infringe the prisoners' rights of access to courts and of freedom of expression and not to be rationally related to any valid penological purpose. The judgment enjoined the defendant, as the Director of the Bureau of Prisons, "from opening outside of plaintiff's presence or reading any incoming mail bearing an apparently genuine return address of an attorney, a law firm, any court official, or any government official whether or not there are any particular markings on the envelope." (Mem. of Judgment at 22.) The judgment was stayed for ten days to allow time for it to be communicated to necessary prison officials.

On October 24, 1990 the Fourth Circuit stayed the implementation of the trial court order pending appeal. Subsequently, the Fourth Circuit reversed this court's judgment, finding the policies reasonably related to valid penological purposes and not violative of plaintiff's protected rights. *Sub. nom. United States v. Stotts*, 925 F.2d 83 (4th Cir.1991). Thus, this court's injunction was effective from its stated effective date of February 9, 1990 until stayed on October 24, 1990.

On March 2, 1990 the plaintiff filed a Motion for Contempt, contending the defendant had disobeyed the court's order. This motion was supplemented by plaintiff on March 9, June 28, and August 24, 1990. Memoranda have been filed in support and in opposition to the motion. This court declined to rule until the conclusion of the appeal process. The motion is now ripe for ruling.

## Jurisdiction

First, the court must determine whether any action should be taken by the undersigned magistrate judge[1] or whether, instead, it should be taken by a district judge of this court. Defendant contends that the undersigned is without jurisdiction to take any action on the motion.

Eleven federal circuits, including the Fourth Circuit, have held constitutional the exercise of civil trial jurisdiction by magistrate judges on consent of the parties pursuant to 28 U.S.C. § 636(c) and the Supreme Court has three times declined to

---

**1.** The title "United States Magistrate" was changed to "United States Magistrate Judge" effective December 1, 1990. Public Law 101–650, Title III, Sec. 321; 104 Stat. 5117. The current title will be used herein, although precedent uses the former title.

review such holdings.[2]

Plaintiff's position is that upon consent of the parties, a reference by a district judge of a civil case to a magistrate judge for trial pursuant to § 636(c) carries with it jurisdiction for all trial court rulings, including punishment for civil contempt. Plaintiff cites *Miami Valley Carpenters v. Scheckelhoff*, 123 F.R.D. 263 (S.D.Ohio 1988) for the proposition that magistrate judges have civil contempt jurisdiction over cases tried on consent.

Defendant distinguishes *Scheckelhoff* by the language used by the parties in that case to give consent:

> The undersigned as a party to the above-captioned action pursuant to Fed.R.Civil P. 73(b), hereby consents to the exercise of civil jurisdiction in this case by United States Magistrate Michael R. Merz under 28 U.S.C. § 636(c). *Such jurisdiction shall include all* pre-trial matters, whether or dispositive, trial, whether to the Court or by Jury, the entry of judgment and *any post-trial matters ....*

123 F.R.D. at 266 (emphasis added).

By contrast, the parties in this action used the following language to confer trial jurisdiction on the undersigned:

> Pursuant to 28 U.S.C. Section 636(c), all parties hereby consent to trial and entry of judgment in this action by Magistrate Alexander B. Denson.

Defendant argues that this language limited exercise of jurisdiction only to matters through the entry of judgment and did not confer jurisdiction for post-judgment rulings as the parties specifically did in *Scheckelhoff.*

It is true that in *Scheckelhoff*, the magistrate judge concluded he had such jurisdiction and he exercised it; however, the undersigned reaches a different conclusion.

■ The power to punish for contempt is inherent in Article III judges. *Ex parte Robinson*, 86 U.S. (19 Wall.) 505, 510, 22 L.Ed. 205 (1873). However, magistrate judgeships are established pursuant to Article I, Section 8, clause 9. Article I conveys no inherent contempt power. *In re Sequoia Auto Brokers Ltd., Inc.*, 827 F.2d 1281, 1284 (9th Cir.1987). Therefore, if such power exists, it must be statutorily based.

■ No statute conveys such power and 28 U.S.C. § 636(e) impliedly denies it:

> Upon the commission of any such act or conduct, the magistrate shall forthwith certify the facts to a judge of the district court and may serve or cause to be served upon any person whose behavior is brought into question under this section an order requiring such person to appear before a judge of that court upon a day certain to show cause why he should not be adjudged in contempt by reason of the facts so certified.

Thus, unlike *Scheckelhoff*, the undersigned concludes that magistrate judges do not have contempt power, even when exercising civil trial jurisdiction pursuant to § 636(c). Instead, such power is retained by the district judges who may punish for contempt acts committed before magistrate judges. *See In re Sequoia*, 827 F.2d at 1290, n. 16 ("Federal magistrates ... have no power of contempt themselves but must certify the facts to a judge of the district court."); *Collins v. Foreman*, 729 F.2d 108, 117 (2d Cir.1984) ("... even under section 636(c) references, the contempt powers remain with the district court.")

---

**2.** The cases so holding, listed in order of the circuits, are: *Goldstein v. Kelleher*, 728 F.2d 32, 36 (1st Cir.1984), cert. denied, 469 U.S. 852, 105 S.Ct. 172, 83 L.Ed.2d 107; *Collins v. Foreman*, 729 F.2d 108, 120 (2d Cir.1984), cert. denied, 469 U.S. 870, 105 S.Ct. 218, 83 L.Ed.2d 148; *Wharton–Thomas v. United States*, 721 F.2d 922, 929–30 (3d Cir.1983); *Gairola v. Commonwealth of Va. Dept. of General Services*, 753 F.2d 1281, 1284–85 (4th Cir.1985); *Puryear v. Ede's Ltd.*, 731 F.2d 1153, 1154 (5th Cir.1984); *K.M.C. Co., Inc. v. Irving Trust Co.*, 757 F.2d 752, 755 (6th Cir.1985); *Geras v. Lafayette Display Fixtures, Inc.*, 742 F.2d 1037, 1045 (7th Cir.1984); *Lehman Bros. Kuhn Loeb v. Clark Oil & Refining Co.*, 739 F.2d 1313, 1316 (8th Cir.1984); *Pacemaker Diagnostic Clinic, Inc. v. Instromedix, Inc.*, 725 F.2d 537, 547 (9th Cir.1984), cert. denied, 469 U.S. 824, 105 S.Ct. 100, 83 L.Ed.2d 45; *Sinclair v. Wainwright*, 814 F.2d 1516, 1519 (11th Cir.1987); and *Fields v. Washington Metropolitan Area Transit Authority*, 743 F.2d 890, 893–95 (D.C.Cir.1984). Only the Tenth Circuit has not yet considered the issue.

The statute requires initially a decision by the magistrate judge to determine whether or not acts have been committed which constitute contempt. If so, the magistrate judge must: 1) certify the facts indicative of such acts to the district judge, and 2) issue a show cause order directing the perpetrator to appear before the district judge to show cause why he should not be held in contempt. The jurisdiction to take these acts is statutorily mandated and does not depend upon consent of the parties. Thus, a magistrate judge has the jurisdiction to certify or to decline to certify for contempt proceedings acts committed before him in a civil trial pursuant to § 636(c), whether or not the language giving consent specifically included post-judgment matters.

■ The leading case of *Proctor v. State Government of North Carolina*, 830 F.2d 514 (4th Cir.1987), has clarified the procedure after certification of facts by a magistrate judge. The certificate of facts to the district judge constitutes a statement of a prima facie case which, if found to be true, may support a finding of contempt. Any party should be allowed to present additional evidence to the district judge. The district judge will consider the certificate of facts from the magistrate judge as well as any additional evidence presented by any party in determining whether to find the party in contempt.

■ Having found jurisdiction to proceed, the undersigned must determine whether or not acts have been committed by the defendant which constitute contempt.

The Order of December 1, 1989 ordered the defendant not to open outside plaintiff's presence any mail bearing an apparently genuine return address of an attorney, a law firm, any court official or any government official. Plaintiff contends this order was violated 24 times, as follows:

|  | Date | Institution | Sender |
|---|---|---|---|
| 1. | 02/09/90 | F.C.I., Atlanta | U.S. Magistrate A. Denson |
| 2. | 02/26/90 | F.C.I., Petersburg | N.C. Prisoner Legal Services |
| 3. | " | " | U.S. Senator D. DeConcini |
| 4. | " | " | U.S. Magistrate A. Denson |
| 5. | " | " | N.C. Prisoner Legal Services |
| 6. | " | " | " |
| 7. | 03/02/90 | " | " |
| 8. | 04/04/90 | " | " |
| 9. | 05/21/90 | Springfield, Mo. | U.S. Senator J. Warner |
| 10. | 05/23/90 | " | U.S. Dept. of Justice |
| 11. | 06/05/90 | " | " |
| 12. | 06/15/90 | " | U.S. Senator J. Warner |
| 13. | 06/25/90 | " | U.S. Dept. of Justice |
| 14. | 06/26/90 | " | N.C. Prisoner Legal Services |
| 15. | 06/29/90 | " | U.S. Senator J. Warner |
| 16. | " | " | U.S. Dept. of Justice |
| 17. | 07/05/90 | " | U.S. Senator J. Warner |
| 18. | 07/13/90 | " | Clerk, U.S.Dist.Ct. |
| 19. | 07/25/90 | " | N.C. Prisoner Legal Services |
| 20. | 07/26/90 | " | DeYoung Press Publishers (marked "special mail")* |
| 21. | 07/30/90 | " | N.C. Prisoner Legal Services |
| 22. | 08/01/90 | " | U.S. Senator J. Warner |
| 23. | 08/06/90 | " | U.S. Dept. of Justice |
| 24. | 08/09/90 | " | N.C. Prisoner Legal Services |

*This item is not covered by the court order.

In response to the motion, defendant has outlined the steps taken to comply with the court order. Regional counsel promptly notified MCC San Diego, where plaintiff was then housed, and FCI Petersburg, where he was to be transferred, of the order and sent a copy of the order for plaintiff's file. Officials at FCI Petersburg contend they were aware of the order and complied with it. They state that they did deliver items to plaintiff that were forwarded from another institution already opened. These officials point out there was a need to be diligent in screening plaintiff's mail because he continued attempts to receive explicit sexual material, which was contraband.

Plaintiff was housed at the United States Medical Center for Federal Prisoners at Springfield, Missouri from May 11, 1990 to August 14, 1990. Officials at that institution candidly admit that they had no knowledge of this court's order. In August, 1990 plaintiff was transferred to the Federal Correctional Institution at Marianna, Florida where he remained for the rest of the time this order was effective. Plaintiff does not contend the order was violated at FCI Marianna.

Of course, the defendant Director of the Bureau of Prisons never opened any of plaintiff's mail. The issue is whether he took reasonable steps to ensure that his subordinates in the prison system knew of and obeyed the order.

Plaintiff contends the order was violated once at FCI Atlanta, seven times at FCI Petersburg, and numerous times at Springfield. Defendant denies the order was violated at Petersburg. He states that a packet of letters was forwarded from another institution and that some of these letters had already been opened, thus explaining the apparent violations. It is uncontroverted that the officials at Springfield "did not get the word" about this order and therefore did not follow it. Apart from the violations at Springfield and the forwarded letters at Petersburg, there are only two or three violations of the court's order. Defendant has furnished evidence that the order was otherwise carefully followed.

The court is aware of the logistical problems in disseminating directives throughout a bureaucracy as large and far-flung as the United States Bureau of Prisons. Although there were admitted violations of the court order, under the circumstances the undersigned concludes that they were not so egregious as to justify punishment for contempt. Since the order is no longer effective, no steps are necessary to ensure future compliance.

For these reasons, the undersigned declines to certify these facts to the district judge for contempt proceedings pursuant to 28 U.S.C. § 636(e).