Thomas P. ATHRIDGE, et al., Plaintiffs,

v.

**AETNA CASUALTY AND SURETY CO., Defendant.**

No. CIV.A.96–2708 HHG/JMF.

United States District Court,
District of Columbia.

July 29, 1998.

William Joseph Rodgers, Charles Belsome Long, Collier, Shannon, Rill & Scott, P.L.L.C., Washington, DC, for Thomas P. Athridge, Sr.

William Joseph Rodgers, Collier, Shannon, Rill & Scott, P.L.L.C., Washington, DC, for Thomas P. Athridge, Jr.

Lee H. Ogburn, Geoffrey H. Genth, Kramon & Graham, for Aetna Casualty and Surety Company.

Richard Edward Starr, Arlington, VA, for Irving Starr, Jorge Iglesias and Alicia Iglesias.

Peter Edward Derry, Pyne & Derry, P.C., Chevy Chase, MD, for Amica Mutual Insurance Company.

## MEMORANDUM OPINION

FACCIOLA, United States Magistrate Judge.

This case is before me for resolution of disputes arising between the parties during discovery. Plaintiffs are Thomas Athridge ("Tommy") and his father. Tommy was severely injured when he was struck by an automobile being driven by Jorge Iglesias ("Jorge"), the defendant's insured. Plaintiffs brought this action, the seventh separate lawsuit spawned by the accident, against Jorge's insurer, Aetna Casualty and Surety Co. ("Aetna"), based on Aetna's actions in defending itself against liability for Tommy's injuries in the underlying tort action. Plaintiffs have filed two motions regarding the discovery they seek in this litigation as well as for sanctions against the defendant and two non-parties.

Plaintiffs' first motion seeks to compel the defendant, Aetna, to produce documents specified in plaintiffs' First Request for Pro-

duction of Documents and for sanctions under Fed.R.Civ.P. 37(a)(4)(A) ("Pls. Mot. to Compel Aetna"). Plaintiffs' second motion is directed to non-parties Irving and Richard Starr.[1] The Starrs, father and son law partners, have represented Jorge and his parents throughout the various legal proceedings resulting from the accident. They continue to represent Jorge and his father, Jesus Iglesias, in this action as witnesses. Plaintiffs seek to compel the production of documents in the Starrs' possession relating to their representation of Jorge and to compel further deposition testimony of Irving Starr and Jesus Iglesias. In addition, plaintiffs move the court to sanction the Starrs for alleged misconduct and for an order directing the Starrs to show cause why they should not be held in civil contempt.

In addition to these two motions, plaintiffs previously sought, and received, a stay of the deposition of Jorge in this case, pending the outcome of the motion directed to the Starrs. Order of April 21, 1998, in Civ. No. 96–2708. This Memorandum Opinion addresses comprehensively all areas of relief sought by plaintiffs with their motions as well as the impending deposition of Jorge. For the reasons set forth below, plaintiffs' first motion to compel discovery from Aetna is granted in part and denied in part. Plaintiffs' second motion to compel discovery from the Starrs and for other relief is granted in part and denied in part.

## BACKGROUND

The circumstances surrounding the accident which is at the center of this case are set out in the recent Court of Appeals' decision, *Athridge v. Rivas*, 141 F.3d 357 (D.C.Cir.1998). For present purposes, it suffices to say that Jorge, who was at the time 16 years old, while driving his relatives' car, struck and permanently and severely injured Tommy, one of his friends.

At the time of the accident, Jorge's parents, Jesus and Alicia Iglesias, held a current personal automobile insurance policy, issued by Aetna. This policy warned the Iglesiases that it did not provide liability coverage "for any person using a vehicle without a reasonable belief that the person is entitled to do so." Aetna's Opp. to Pls. Mot. to Compel Aetna at 2. From 1987 until today, Aetna has insisted that this exclusion—No. 11—relieves it of any financial responsibility to Tommy because Jorge did not have a reasonable belief that he was entitled to drive his relatives' car.

Jorge's relatives are Francisco and Hilda Rivas, who did business as Churreria Madrid Restaurant. Francisco and the restaurant owned the car which Jorge was driving at the time of the accident. They held a policy issued by Government Employees Insurance Company ("GEICO") which limited liability to persons who were using the vehicle with the policy owners' permission. GEICO has insisted that, like Aetna, it has no financial responsibility to Tommy because Jorge drove the car without the permission of its owners.

### The District Court Actions

The accident generated four lawsuits in this Court. In Civ. No. 89–1222 Tommy sued Jorge, Francisco Rivas and Churreria Madrid Restaurant. In Civ. No. 92–1866, Tommy sued Aetna directly, premising his complaint on the failure of Jorge's parents to supervise him. In Civ. No. 92–1867, Tommy sued Jorge's parents, and in Civ. No. 92–1868, Tommy sued Hilda Rivas, Francisco's wife. These actions were consolidated with the original action and on July 19, 1995, Judge Thomas Penfield Jackson granted summary judgment in favor of all defendants except Jorge. General, Exhibits 25–28. That surviving action against Jorge was transferred to Judge Harold Greene for trial. After trial, Judge Greene awarded Tommy substantial damages.[2] Judge Greene's deci-

---

1. This motion is entitled *Plaintiffs' Motion for an Order to Show Cause Why Certain Nonparties Should Not Be Found in Civil Contempt, To Sanction Attorney Misconduct by an Award of Fees and Expenses and by Disqualification as Counsel, To Compel the Production of Documents and Records as Heretofore Commanded by Subpoena, and To Compel Answers to Deposition Questions* ("Pls. Mot. to Compel Starrs").

2. Tommy was awarded $1,400,000 for diminished earning capacity and $4,000,000 for pain and suffering and Tommy's father was awarded $110,010.78 for medical expenses. *Athridge v. Rivas*, 141 F.3d at 362 (D.C.Cir.1998).

sion was thereafter summarily affirmed. *Athridge v. Iglesias,* No. 96–7261 (D.C.Cir. June 30, 1997).

On April 21, 1998, the Court of Appeals affirmed Judge Jackson's grant of summary judgment to the Iglesiases and Aetna but reversed his grant of summary judgment to Francisco and Hilda Rivas and the Churreria Madrid Restaurant. *Athridge v. Rivas,* 141 F.3d 357, *supra.* Tommy will therefore be permitted to advance his claims that because of a principal-agent relationship, or because they were negligent, Francisco and Hilda Rivas and their restaurant should be held liable to him for his injuries.

### The Superior Court Actions

Although Tommy prosecuted his claims against Jorge in this Court, Aetna brought an action against Jorge in the District of Columbia Superior Court. Aetna's action sought a declaration that "there [wa]s no coverage for the claims" asserted by Tommy in 89–1222 which was then pending in this Court. *Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment* [hereinafter "Aetna's Mot. to Dismiss"], Ex. 14 at 2. The Superior Court granted Aetna summary judgment on February 11, 1991. Aetna's Mot. to Dismiss, Ex. 17. Jorge's appeal to the District of Columbia Court of Appeals from the order granting Aetna summary judgment was dismissed for failure to pay the docketing fee and file a docketing statement. Aetna's Mot. to Dismiss, Ex. 19.

GEICO followed suit (literally). It too sought and secured from the Superior Court a declaratory judgment that it could not be made responsible for Tommy's accident. Aetna's Mot. to Dismiss, Ex. 12. No appeal was taken from that determination.

### The Assignment of Jorge's Chose-in–Action Assets to Tommy

While Tommy's action against Jorge, 89–1222, was pending trial, Jorge's counsel, Irving Starr, advised Tommy's counsel that Jorge would soon be filing a bankruptcy petition in North Carolina. Pls. Mot. to Compel Starrs, Ex. 1 (dated February 21, 1996). Tommy then sought, and Judge Greene granted, a temporary restraining order, preventing Jorge from conveying any cause of action premised on liability arising from the obligation of Aetna to defend or indemnify Jorge because of the injuries to Tommy. *Id.,* Ex. 2 and 3. Ultimately, as part of the relief granted Tommy after trial, Judge Greene ordered Jorge to convey such causes of action to Tommy. Aetna's Mot. to Dismiss, Ex. 29. In accordance with that Order, Jorge assigned on March 20, 1997:

> any and all choses in action ... which I may have against any person ... for omission or for negligence or for intentional misconduct, pertaining to the liability of myself or others for the personal injuries incurred by ... Thomas P. Athridge, Jr., on July 29, 1987 and thereafter, including but not limited to the obligation to investigate or indemnify the liability of myself and others to such injuries and expenses to Plaintiffs or the undertaking to defend me against any claim of liability for such personal injuries and expenses.

*Amended Complaint,* Civ. No. 96–2708, Ex. 1.

### Civil Action No. 96–2708

In 1996, following the entry of judgment against Jorge in Civ. No. 89–1222, Tommy filed this action against Aetna in this Court. The *Amended Complaint* contains four counts. Tommy claims that

> [1.] Aetna is required to indemnify plaintiffs for the damages they have suffered arising from the negligent use by Jorge Iglesias of a motor vehicle in the United States on July 29, 1987 as found by the Court in Civil Action No. 89–1222;

> [2.] Aetna's actions ... constitute willful, malicious, and oppressive breach of the fiduciary duty of candor, the duty to exercise due care, and the obligation to abide by a covenant of good faith and fair dealing which Aetna owed to plaintiffs' assignor-insured;

> [3.] Aetna's actions ... were intentional, willful, reckless, and improper and constitute misrepresentation and the unlawful, oppressive, and perverted abuse of the judicial process to accomplish results that are outside the scope of such process, not legally obtainable thereby, and the plain-

tiffs herein have been greatly injured as a result of such actions by defendant Aetna. Further such actions of defendant are outrageous conduct that is contrary to applicable public policy, have caused the plaintiff Thomas P. Athridge to suffer severe emotional distress, and constitute the intentional infliction of emotional distress on a plaintiff whom defendant full well knew was peculiarly susceptible to such emotional distress as a consequence of his traumatic brain injury;

[4.] Aetna's actions ... constitute unlawful trade practices in violation of the D.C. Consumer Protection Procedures Act, ... D.C.Code § 28–3905(k)(1).

*Amended Complaint* at 15–16. The factual basis of the complaint concerns the legal tactics Aetna employed to secure the Superior Court judgment which granted it the declaration that the policy exclusion applied and relieved it of the responsibility both to indemnify Jorge for Tommy's injuries and to defend Jorge. Plaintiffs proceed on a theory that these actions injured Jorge and, ultimately, Tommy.

Thus, with Counts 1, 2 and 4, Tommy, as Jorge's assignee, seeks to impose liability on Aetna for its alleged derelictions and omissions in the manner in which it dealt with Jorge, its insured, by claiming that its actions violated duties it owed Jorge. In other words, Tommy, now standing in Jorge's shoes, is asserting those rights which Jorge had against Aetna which Aetna allegedly violated in the manner in which it sought and secured a judicial declaration and then allegedly abandoned defending him in Tommy's successful lawsuit before Judge Greene. Likewise, Count 3, which seeks damages for intentional infliction of emotional distress by Aetna directly against Tommy, is based on Aetna's actions with respect to Jorge but posits Tommy as the intended and real victim of Aetna's legal maneuvers.

## ANALYSIS

With such a long and tortured history, and the curious legal posture of both Tommy and Jorge in this action, it is not difficult to fathom the nature of plaintiffs' discovery disputes with both Aetna and the Starrs. In pressing these derivative claims against Aetna, plaintiffs seek all documents relating to Aetna's involvement in the prior cases and all documents relating to the Starrs representation of Jorge. Both Aetna and the Starrs have objected to providing some of the requested documentary information and the Starrs have objected to Irving Starr and Jesus Iglesias answering several deposition questions.

## I. Resolution of the Parties' Discovery Disputes

### A. The Motion to Compel Aetna to Produce Documents

To make out his case against Aetna, Tommy demands access to Aetna's files concerning its handling of Jorge's case from its inception. Aetna objects to each and every one of plaintiffs' nineteen Requests for Production ("RFP").

### 1. Attorney–Client Privilege

Aetna claims attorney-client or work product immunity as to fourteen of the nineteen requests for production.[3] To Tommy, the assignment of whatever claims Jorge had against Aetna renders Aetna's claim of attorney-client and work product privilege nugatory. There is ample support for that proposition.

■ If one lawyer represents two persons or entities, neither can claim an attorney-client privilege when, having fallen out, one sues the other and demands to know what the other said to the lawyer when she was representing both of them. *Eureka Investment Corp. N.V. v. Chicago Title Insurance Co.*, 743 F.2d 932 (D.C.Cir.1984); *Central National Insurance Co. v. Medical Protective Co.*, 107 F.R.D. 393 (E.D.Mo.1985). This principle has been applied when an insurance company retains counsel who represents the insured. When the insured then sues the insurance company, the courts have rebuffed that company's claiming attorney client privilege to prevent the insured's access to the documents created by counsel when she was

---

**3.** These are RFP Nos. 1, 2, 4, 5, 6, 7, 8, 9, 10, 12, 14, 15, 17, and 18.

representing the company's and the insured's common interest in defeating the case brought against the insured. *Central National Insurance Co. v. Medical Protective Co., supra; Layton v. Liberty Mutual Fire Insurance Co.,* 98 F.R.D. 457 (E.D.Pa.1983). The latter principle has been applied with equal force when the insured assigns whatever claim she had to the person who sued her in the first place. In that situation, the insurance company cannot claim an attorney-client privilege against the insured's assignee, any more than it could claim it against the insured. *Catino v. Travelers Ins. Co.,* 136 F.R.D. 534, 537 (D.Mass.1991); *see also Simpson v. Motorists Mutual Ins. Co.,* 494 F.2d 850, 855 (7th Cir.1974), *cert. denied* 419 U.S. 901, 95 S.Ct. 184, 42 L.Ed.2d 147 (1974); *Shapiro v. Allstate Ins. Co.,* 44 F.R.D. 429, 431 (E.D.Pa.1968). In those cases, the courts held that the insurance company could not claim a privilege against the insured or the insured's assignee.[4]

■ I find the authority for the plaintiffs' proposition to be persuasive. Jorge assigned "any and all choses in action" which he had "for omission or for negligence or for intentional misconduct" pertaining to his or others' liability for the injuries to Tommy. In an action such as this against the Iglesiases' insurance company for its failures toward its insured, the value of that assignment is rendered next to nothing without access to information about Aetna's actions toward Jorge in Civ. No. 89–1222. I conclude that, in this case, the attorney-client and work product privileges may not be raised against Tommy by virtue of the global assignment of assets and rights. However, that general conclusion does not end the inquiry.

Aetna attempts to distinguish this line of authority by insisting that it took a position antithetical to Jorge's by establishing with its Superior Court action that it was not responsible for his defense or to indemnify him, in the event Tommy was successful in his lawsuit against Jorge. But, discovery to date has established that Aetna "hedged its bets." In his deposition, Irving Starr testified that, as trial approached in the action before Judge Green in which Tommy and his family sued Jorge, he asked a friend of his to help him. That friend, whose name is Paul Pearson, entered his appearance for Jorge in Civ. No. 89–1222. Aetna's Opp. to Mot. to Compel Aetna at 12.[5] It appears that Aetna compensated this lawyer for the work he did at the trial. Therefore, that lawyer was representing the common interest Aetna and his clients had in defeating the claim Tommy and his father were asserting. This was so even though Aetna had already established that it was not responsible to defend or indemnify Jorge. Given the horrible injuries Tommy suffered, it is perfectly understandable that Aetna would, as it were, wear a belt and suspenders and aid Irving Starr in his defense of Jorge by paying the lawyer Irving invited to help him defend Jorge even though it had already convinced the Superior Court that it was not contractually obliged to defend Jorge in the trial before Judge Greene.

Since the record developed so far indicates that Aetna paid for an attorney to aid Irving Starr in the representation of Jorge, and there is no reason to believe that Aetna paid him out of the goodness of its corporate heart or for eleemosynary purposes, his lawyer was simultaneously serving Aetna's and Jorge's interest. His representation of Aetna's interests in defeating Tommy's lawsuit against Jorge compels the conclusion that Aetna could not use the attorney client or work product privileges to prohibit Jorge from access to documents that were generated or pertain to that lawyer's work on Jorge and Aetna's behalf and to the payments Aetna made to him had Jorge sought them. Since it could not have made that argument against Jorge, it cannot make it against Tom-

---

4. However, cases involving other types of transfers of assets or claims have held that these privileges are not transferred to the assignee. *See In re Hunt,* 153 B.R. 445, 453–454 (Bkrtcy. N.D.Tex.1992) (trustee in bankruptcy does not acquire privilege through transfer of avoidance cause of action); *FDIC v. McAtee,* 124 F.R.D. 662, 664 (D.Kan.1988) (FDIC, as assignee of assets, could not assert attorney-client privilege

of former owner of assets); *In re Yarn Processing Patent Validity Litig.,* 530 F.2d 83, 90 (5th Cir. 1976) (assignment of a patent does not assign attorney along with it).

5. Pearson apparently also represented Jorge's parents in Civ. No. 92–1867. *Id.*

my. Tommy, as Jorge's assignee, has succeeded to all rights Jorge had against Aetna. That would include the right to claim that, whenever Aetna hired an attorney who involved himself in the common interest the Iglesiases and Aetna had in defeating Tommy's claim, Aetna could not assert an attorney-client privilege to bar Jorge's access to documents otherwise protected by any attorney-client privilege or work product privilege Aetna could claim.

I ordered Aetna to produce for my inspection *in camera* all the documents which it claims are protected by the attorney-client privilege and I find that none of the documents are protected by that privilege, irrespective of who may now claim it.

The attorney-client privilege protects communications from the client to the attorney; the work product privilege shields the attorney's "mental impressions, conclusions, opinions, or legal theories." Fed.R.Civ.P. 26(b)(3). The former is animated by the societal interest in encouraging clients to be as candid as possible with their attorneys so that they will receive sound advice; the hope is that they will follow it so that the privilege is said to encourage lawful behavior. *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). *See Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 862 (D.C.Cir.1980). The latter is motivated by a desire to encourage the most effective advocacy possible which the courts believe will not occur if an attorney must work with the opponent in litigation looking over his shoulder. *See Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

■ In this Circuit, the attorney-client privilege is narrowly circumscribed by its purpose. It is construed narrowly to protect from disclosure only those communications from the client to the attorney which were intended to be confidential and made for the purpose of seeking legal advice. Communications from the attorney to the client are privileged, therefore, only insofar as they disclose those kinds of communications from the client to the attorney. *Evans v. Atwood,* 177 F.R.D. 1, 3 (D.D.C.1997). Thus, the Court of Appeals has held, for example, that

opinions of counsel, which did not in themselves disclose any information transmitted to the attorney by a client who was expecting that it be kept confidential, were not protected by the attorney-client privilege. *Mead Data Central v. United States Department of Air Force,* 566 F.2d 242, 253 (D.C.Cir.1977). While such opinions might, in a given instance, be protected from disclosure as work product if they were drafted by an attorney in anticipation of litigation, they cannot in themselves be protected by the attorney-client privilege unless they disclose information transmitted by the client with the expectation that it be kept in confidence. In this Circuit, a document created by an attorney is protected by the attorney-client privilege only if the disclosure of its contents will necessarily and inevitably disclose a communication from the client which the client intended to be confidential.

■ It is clear that none of the documents Aetna claims are privileged meet these criteria. The claims file, generated by employees, contains nothing which was communicated by any of these employees to any lawyer retained by Aetna in confidence. To the contrary, the claims file contains reports by these employees of developments in the various lawsuits, authorizations to pay lawyers' bills and discussions of the proper reserves to maintain. None of this information was communicated to an attorney, at all, let alone confidentially and for the purpose of seeking legal advice.

■ The other file, consisting of correspondence to Aetna from Paul Pearson, contains his status reports on the litigation and bills, is also not protected. There is nothing in these letters and bills which discloses any information communicated to Pearson by either Aetna or any member of the Iglesias family for the purpose of seeking his legal advice.

## 2. Work Product Privilege

■ The work product privilege protects neither group of records either. Fed. R.Civ.P. 26(b)(3) protects from ordinary disclosure "documents ... otherwise discoverable ... prepared in anticipation of litigation

and for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer or agent....)" The concept captured by the words "in anticipation of litigation and for trial" has a temporal and motivational dimension:

At the risk of stating the obvious (which generally becomes obvious only after it has been stated), the concept of "in anticipation of litigation" contains two related, but nevertheless distinct, concepts. One is temporal. The other is motivational. To be "in anticipation of" litigation, a document must have been prepared before or during the litigation. That temporal element, standing alone, however, is not sufficient. The document or material must have also been prepared *for* litigation and not *for some* other purpose. It is the second concept that is determinative for the work-product protection. Thus, materials may be prepared before or when litigation is imminent or pending without necessarily having been prepared "in anticipation" of litigation from a motivational point of view.

Epstein, *The Attorney–Client Privilege and the Work–Product Doctrine, supra* at 314.

In *Jordan v. United States Department of Justice*, 591 F.2d 753 (D.C.Cir.1978), the Department of Justice claimed the work product exemption for documents which guided prosecutors in the exercise of their discretion in deciding, for example, whether a person should be charged with a crime and prosecuted or diverted from the criminal justice system. The Court of Appeals rejected the claim:

The work-product rule does not extend to every written document generated by an attorney; it does not shield from disclosure everything that a lawyer does. Its purpose is more narrow, its reach more modest. The Supreme Court articulated the rule's rationale in the *Hickman* [v. *Taylor*, 329 U.S. 495, 511, 67 S.Ct. 385, 91 L.Ed. 451 (1947)] case:

Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

It is clear from this statement that the purpose of the privilege is to encourage effective legal representation within the framework of the adversary system by removing counsel's fears that his thoughts and information will be invaded by his adversary. In other words, the privilege focuses on the integrity of the adversary trial process itself and seeks to ensure that such proceedings do not degenerate into mere "battles of wits." This focus on the integrity of the trial process is reflected in the specific limitation of the privilege to materials "prepared in anticipation of litigation or for trial."

In view of the work-product rule's underlying rationale, we think it clear that the Manual and FOT Guidelines sought by appellee do not fall within this privilege. Neither the Manual nor the Guidelines were prepared in anticipation of a particular trial; in fact, they were not even prepared in anticipation of trials in general. Rather, these documents were promulgated as general standards to guide the Government lawyers in determining whether or not to bring an individual to trial in the first place. The guidelines and instructions set forth in these documents do not relate to the conduct of either on-going or prospective trials; they do not include factual information, mental impressions, conclusions, opinions, legal theories or legal strategies relevant to any on-going or prospective trial. The public disclosure of these guidelines could have no conceivable effect on the actual conduct of an on-going or prospective trial.

*Id.* at 775. *Accord United States v. Gulf Oil Corporation*, . 760 F.2d 292, 296 (Em.App.1985) (inquiry is to determine primary motivating purpose behind creation of document: "If the primary motivating purpose behind the creation of the document is not to assist in pending or impending litiga-

tion, then a finding that the document enjoys work product immunity is not mandated."); *United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir.1981) (to qualify as work product "primary motivating purpose behind the creation of the document was to aid in possible future litigation."); *First Pacific Networks, Inc. v. Atlantic Mutual Insurance Co.*, 163 F.R.D. 574, 582 (N.D.Cal.1995) ("When it is clear that documents would have been prepared independent of any anticipation of use in litigation (*i.e.* because some other purpose or obligation was sufficient to cause them to be prepared) no work product protection can attach."); *Sterling Drug Inc. v. Harris*, 488 F.Supp. 1019, 1026 (S.D.N.Y.1980) ("It must still be shown that the documents were prepared by or at the request of an attorney to prepare for the upcoming litigation.").

It is clear that none of the documents in either file were prepared "for trial" in this sense. None of them would be of any use to anybody during the trial before Judge Greene and none of them were prepared to be offered into evidence or to memorialize a witness's statement, and none of them contain anything which could possibly disclose a lawyer's strategy as to that trial. They were created for entirely non-litigation purposes, *i.e.*, to transmit information about current developments in the litigation, to secure payment for services rendered and to plan a reserve for contingencies. Since they were not prepared "for trial" they are not protected by the work product privilege.

### 3. Relevance and Burdensomeness Objections

#### a. Insufficient Relevance and Burdensomeness Objections

■ Aetna includes the standard, boilerplate "general objections" section in its responses to plaintiffs' request for production which includes blanket objections as to relevance, burdensomeness and attorney-client privilege and work product privilege. Pls. Mot. to Compel Aetna, Ex. 2 at 1–2. Such general objections do not comply with Fed. R.Civ.P. 34(b) and courts disfavor them.

*Pulsecard, Inc. v. Discover Card Services, Inc.*, 168 F.R.D. 295, 303 (D.Kan.1996).

■ Plaintiffs argue that, as to nine of the nineteen requests for production, the defendant asserts an ambiguous relevance objection.[6] In each of those nine instances, the defendant responds that it objects on the grounds that the request "is not reasonably calculated to lead to discovery of admissible evidence" but that it will produce "relevant, non-privileged" documents that are responsive to that request. Pls. Mot. to Compel Aetna, Ex. 2, *passim.* In other words, the defendant does not object with specificity to the request itself, or to its scope, on relevance grounds. Rather, it merely repeats the discovery standard contained in Fed. R.Civ.P. 26(b)(1), then states that it will determine what documents are relevant and produce those documents only. This type of answer hides the ball. It leaves the plaintiff wondering what documents are being produced and what documents are being withheld. Furthermore, it permits the defendant to be the sole arbiter of that decision. Such an objection is really no objection at all as it does not address why potentially responsive documents are being withheld. The defendant, having no incentive to err on the side of disclosure, has arrogated to itself the authority to decide the question of relevance which is unquestionably the decision of the judge. Aetna's relevance objections in this vein appear to be of no more usefulness to the plaintiffs or to the Court than the objections lodged in the general objections section. Asserting a relevance objection, then proceeding to agree to produce "relevant, non-privileged" documents "[s]ubject to and without waiving" that objection, serves only to obscure potentially discoverable information and provides no mechanism for either plaintiffs or the Court to review defendant's decisions.

Aetna does not elaborate on its objections to these requests in its opposition to plaintiffs' motion to compel. Aetna's Opp. to Pls. Mot. to Compel Aetna at 11. The Court, therefore, is at a loss to decide the propriety

---

6. These are RFP Nos. 1, 2, 4, 7, 8, 9, 10, and 12. As for RFP No. 19, defendant merely states it will produce "relevant, non-privileged" documents in response.

of Aetna's relevance objections with only a repeated assertion of the broad discovery standard as the stated objection. Because Aetna agreed to produce the documents and did not lodge specific relevance objections to these nine requests, I conclude it has waived its right to object. The Federal Rules speak directly to the necessity to state objections with specificity with regard to responses to interrogatories. Rule 33 provides that "[a]ll grounds for an objection to an interrogatory shall be stated with specificity" and that "[a]ny ground not stated in a timely objection is waived." Fed.R.Civ.P. 33(b)(4). Although Rule 34 governing production of documents does not contain identical language, "no reason exists to distinguish between interrogatories and requests for production" as to the requirement for specificity and the risk of waiver. *Pulsecard*, 168 F.R.D. at 303. Indeed, as pointed out by the court in *Pulsecard*, the advisory committee notes to the 1970 amendment to Rule 34 state that the "procedure provided in Rule 34 is essentially the same as that in Rule 33." Fed.R.Civ.P. 34, advisory committee notes, 1970 amendment. With no specific objection lodged and the general objection insufficient, Aetna's relevance objections to Requests for Production 1, 2, 4, 7, 8, 9, 10, 12, and 19 must fail.

■ Similarly, with regard to burdensomeness objections, defendant merely states, in conclusory fashion, that the requests are unduly burdensome.[7] That too is insufficient. There is nothing in defendant's responses which permits the Court to ascertain why or how the request is burdensome in order to make a ruling. The party opposing discovery "must show specifically how an interrogatory is overly broad, burdensome or oppressive, by submitting affidavits or offering evidence which reveals the nature of the burden." *Chubb Integrated Systems Limited v. Nat'l Bank of Washington*, 103 F.R.D. 52, 59–60 (D.D.C.1984); *see also, Burns v. Imagine Films Entertainment, Inc.*, 164 F.R.D. 589, 592–593 (W.D.N.Y.1996). The same is true of document requests. Thus, defendant's objections to burdensomeness are also waived.

7. These are RFP Nos. 3, 15, 17, and 18.

**b. Specific Relevance Objections**

The next set of RFPs involves relevance objections which are essentially no more specific than the first set: defendant lodges the objection by merely again tracking the language of Rule 26(b)(1) but does not thereafter agree to produce any documents at all.[8] Though I could just as easily conclude that these objections are also waived for lack of specificity, the parties addressed the specifics of these objections in their pleadings; therefore, I will review the relevance of each.

■ *With RFP No. 3,* plaintiffs seek Aetna's solicitation documents pertaining to the insurance policy issued to Jesus and Alicia Iglesias. Aetna argues that the solicitation documents are irrelevant because plaintiff has not elicited any testimony from Jesus raising a factual issue that the solicitation was inaccurate or misleading in order to support the D.C. Consumer Protection Act claim in the complaint. Plaintiff claims such requests are relevant both to the D.C. Consumer Protection Act claim and the indemnification claim. In any event, plaintiff argues, defendant should not be permitted to test the sufficiency of the plaintiffs' claims without seeking a protective order.

■ Aetna's objection is sustained. It is true that plaintiffs are attempting to make out a case of Aetna's bad faith and breaches of duties toward the insured and, ultimately, toward plaintiffs. It is also true that plaintiffs claim that Jorge is a "consumer" under the D.C. Consumer Protection Act and that Aetna's "acts and practices ... constitute[d] misrepresentations or failure to disclose material facts misled or tended to mislead" Jorge in violation of the law. *Amended Complaint* at 14–15. However, each and every factual allegation in the *Amended Complaint* concerns only the actions of Aetna toward Jorge with regard to its handling of his claim following the accident. Plaintiffs do not allege a single fact regarding misrepresentations or other bad acts at the time the Iglesiases signed the policy. Furthermore,

8. These are RFP Nos. 3, 11, 13, 14, 15, 16, 17, and 18.

no facts in that regard have emerged during discovery. In my view, even under the broad standard permitted by Rule 26(b)(1), Aetna's behavior toward the insured parties surrounding the solicitation of the policy is irrelevant and not reasonably calculated to lead to admissible evidence pertaining to the claims in the *Amended Complaint.*

*With RFP No. 11,* plaintiffs seek documents containing the names and addresses of all current or former employees involved in handling the claims involved in Civ. No. 89–1222 and the declaratory judgment action. Aetna argues that plaintiffs must set up depositions with these witnesses through it and that plaintiffs are ethically forbidden from making *ex parte* contact with them. Moreover, the documents already produced by Aetna identify all the persons involved. For their part, plaintiffs assert that *ex parte* contacts are not forbidden so long as the employees were not extensively exposed to confidential information.

While counsel should always consult with each other before interviewing persons employed by their opponents, neither may prevent the other from interviewing witnesses. Aetna may employ these people, but it does not own them and cannot prevent the disclosure of their identities or erect a steel curtain around them if Tommy's counsel sees fit to interview or depose them. At a deposition or interview, Aetna's counsel would be free preserve its relevance objections or assert any further privilege claims it deems necessary. The Court is mindful, however, and admonishes plaintiffs' counsel, that *ex parte* contacts with Aetna's employees could inadvertently lead to the exposure of privileged matter and the consequences for such a breach could be substantial, including disqualification of counsel. *See Camden v. Maryland,* 910 F.Supp. 1115, 1122 (D.Md.1996). With that said, however, Aetna's objection is overruled.

*With RFP No. 13,* plaintiffs seek policies of reinsurance applicable to plaintiffs' claims. Defendant claims that there are no documents responsive to this request because the

Iglesias policy is not subject to any reinsurance. With that assertion, there is nothing further to compel.

■ *With RFP No. 14,* plaintiffs seek documents regarding the establishment of a reserve for plaintiff's tort claims.[9] Aetna argues that merely claiming bad faith on the part of the insurance company does not automatically make reserve information discoverable as it would be if it had ever appeared that Jorge was covered by the policy or if Aetna had rejected a settlement demand in Civ. No. 89–1222. Since plaintiffs made no settlement demand before Aetna got out of the case in the declaratory judgment action, Aetna contends the reserve information is irrelevant. Plaintiffs assert that Aetna had indicated that it would not consider settlement until after the declaratory judgment action was resolved, so Aetna is now making an insincere argument. Moreover, this is a case involving fiduciary duties by the insurance company on behalf of the insured or the insured's assignee, so evidence of a settlement reserve is relevant.

Aetna's objection is overruled. Plaintiffs are entitled to inquire into Aetna's actions with respect to its insured's claims in an action against Aetna for breaches of duty to the insured. Under the broad standard of relevance at the discovery stage, "[t]he information sought will to some degree demonstrate the thoroughness with which [Aetna] investigated and considered [Jorge's] claim and thus is relevant to the question of good or bad faith of defendant in denying" to indemnify or defend Jorge. *Savoy v. Richard A. Carrier Trucking, Inc.,* 176 F.R.D. 10, 12 (D.Mass.1997), *quoting Atlanta Coca–Cola Bottling Co. v. Transamerica Ins. Co.,* 61 F.R.D. 115, 117 (N.D.Ga.1972); *accord North River Ins. Co. v. Greater New York Mutual Ins. Co.,* 872 F.Supp. 1411, 1412 (E.D.Pa. 1995). *But see Independent Petrochemical Corp. v. Aetna Casualty & Surety Co.,* 117 F.R.D. 283, 288 (D.D.C.1986) ( Burnett, M.J.) (motion to compel discovery of reserve information denied as irrelevant), *aff'd on motion*

---

9. Insurance companies establish monetary reserves "to estimate the pending losses to be paid" on claims by the policyholder. Michael C. Thomsett, *Insurance Dictionary* at 121 (McFarland & Co. 1989).

*for reconsideration* 1987 WL 8512 (D.D.C. March 9, 1987) (Flannery, J.).

By concluding that reserve information is discoverable, I am reaching a different conclusion than did Magistrate Judge Burnett and Judge Flannery in *Independent Petrochemical,* an insurance coverage action arising from a dioxin contamination incident. In that case, the Court was persuaded that reserve information was irrelevant by the insurance company's argument that "a reserve essentially reflects an assessment of the value of a claim taking into consideration the likelihood of an adverse judgment and that such estimates of potential liability do not normally entail an evaluation of coverage based upon a thorough factual and legal consideration when routinely made as a claim analysis." *Id.* In this case, the timing or establishment of any reserve bears on Aetna's handling of his claim because plaintiffs accuse Aetna of bad faith and breaches of duties toward Jorge. Thus, that the establishment of a reserve may be "routinely made" renders that information sufficiently relevant to this breach of duties case to meet the standard of Rule 26(b)(1).

■ **With RFP Nos. 15 and 16,** plaintiffs seek documents "analyzing or commenting upon" the decisions of the courts in *Aetna Casualty & Surety Co. v. Nationwide Mutual,* 326 N.C. 771, 392 S.E.2d 377 (1990) and *Aetna Casualty & Surety Co. v. Coronet Ins.,* 44 Ill.App.3d 744, 3 Ill.Dec. 371, 358 N.E.2d 914 (1976). In the *Nationwide Mutual* case, the North Carolina Supreme Court held that whether the driver had a reasonable belief he had permission to drive the insured vehicle— the same "reasonable belief" policy exclusion at issue in this case—was a question for the jury and therefore, summary judgment was not appropriate. 392 S.E.2d at 380. The *Coronet* case involved a subrogation action brought by Aetna against a primary insurer in which the court held the primary insurer estopped from raising the permissive-use policy exclusion defense in the subrogation action when it had failed to defend the insured in the first instance.

Plaintiffs contend these cases are relevant because they involve the same policy exclusion that is at issue here. Defendant argues that the cases are factually distinguishable and involve the law of states other than the District of Columbia. Plaintiffs respond that they seek factual information about how Aetna circulated these decisions within the company. That information would bear on Aetna's state of mind and intent regarding the alleged breach of fiduciary duty when Aetna filed the declaratory judgment action.

Aetna's relevance objection is sustained. The cases in other jurisdictions are not binding on the D.C. actions. It is difficult to see why the manner in which these cases were circulated has any bearing whatsoever on Aetna's conduct toward Jorge and Tommy in the prior litigation. Plaintiffs cite a case for the proposition that information as to how Aetna acted in an inconsistent manner in resolving claims with the same policy exclusion is discoverable. *Nestle Foods Corp. v. Aetna Casualty & Surety Co.,* 135 F.R.D. 101, 106 (D.N.J.1990). However, in *Nestle,* the relevance of inconsistent interpretations of the same policy provision by Aetna went to the ambiguity of the policy provision, a central issue to that case. *Id.* Here, there is no similar legal issue; rather, the issue of whether Jorge had a reasonable belief he had permission to operate the vehicle is a fact-bound issue. As such, I am not convinced that Aetna's state-of-mind as to these other state cases in which Aetna was a defendant is relevant.

■ **With RFP No. 17,** plaintiffs seek documents regarding the liability insurance coverage required under the Diplomatic Relations Act of 1978 ("DRA"), 22 U.S.C. § 254e. Aetna argues that plaintiffs lack a good-faith basis for asserting that the DRA applies here; Jorge was a legal permanent U.S. resident and Jesus was a member of the foreign mission's service staff and therefore not subject to immunity. Plaintiff argues that Jesus is subject to the DRA requirement that mission members carry automobile insurance.

Aetna's objection to this RFP is sustained. Aetna procured a letter from the Embassy of Spain attesting to the fact that Jesus was a member of the Embassy's service staff and has never been subject to immunity or privi-

leges. Aetna's Opp. to Pls. Mot. to Compel Aetna, Ex. H. But even if Jorge is a covered person in the statute, as it appears he may be, 22 U.S.C. § 254a(1)(C), the effect of the statutory requirement is a legal issue and is, therefore, an appropriate subject for plaintiffs' own legal research, not for discovery from Aetna. Furthermore, the statute puts the onus of liability insurance for members of a foreign mission on the mission itself, not upon insurance companies. Even as to the claims for breaches of Aetna's duties to the insured, it is unclear to me how Aetna's understanding of the DRA is in any way relevant to the issues when Aetna had no obligations under the DRA.

**With RFP No. 18,** plaintiffs seek documents "analyzing, referring to, or commenting upon" insurance required by the D.C. Compulsory/No Fault Insurance Law. Aetna argues that nothing in the D.C. law prohibited it from including a permissive-use clause in the policy. Furthermore, it is irrelevant to this action without plaintiff demonstrating how it applies. Plaintiffs claim Jorge is a covered person within the statute.

Aetna's relevance objection is sustained. Plaintiffs do not demonstrate the relevance of such an inquiry with regard to the claims in this action. Judge Greene, in denying Aetna's motion to dismiss or for summary judgment in this case, concluded that the "issue of coverage under the Aetna policy turns on the question of whether Jorge Igesias operated the vehicle 'without a reasonable belief that he was entitled to'" and that determination "is one of 'the state of mind of the operator, a factual question for the jury.'" Order of July 24, 1997, in Civ. No. 96–2708. Because "[n]o court has actually and necessarily decided this issue," *id.,* it is alive in this litigation and is pertinent to plaintiffs' claim for indemnification. That question is, however, a different one from whether exclusion No. 11 could be included in the policy according to the law of the District of Columbia in the first place. That is a legal issue for which plaintiffs may conduct their own research and seek to amend their complaint, if they see fit; without more, such a request is not relevant to the claims in this action.

## B. The Motion to Compel the Starrs to Produce Documents

Jorge's parents hired Irving Starr, Esq., to represent their son. Mr. Starr did so in this Court and in the Superior Court. As to the Superior Court action and as noted above, Aetna secured a declaratory judgment that it had no liability to defendant or indemnify Jorge because of Tommy's injuries.

Mr. Starr also represented Jorge at the trial before Judge Greene. Since he did, and since Aetna's actions in those lawsuits are the premise of this action, Tommy wants discovery from Mr. Starr as to what he knows about Aetna's actions during those lawsuits. Moreover, as is understandable, Mr. Starr has a substantial file as to his representation of Jorge and Tommy wants to see it. Mr. Starr, who is represented by his son, Richard Starr, resists Tommy's discovery on the grounds that some of the questions Tommy's counsel has asked him and some of the documents Tommy wants to see are privileged either by the attorney-client or the work product privileges. For his part, Tommy, pointing to the assignment and viewing himself as Jorge's successor-in-interest, insists that, if there are privileges, he now holds them and they cannot be used to block the access he seeks.

The question presented is whether the transfer of rights by assignment from Jorge to Tommy also transferred Jorge's right to claim attorney-client privilege as to confidential information he communicated to the Starrs. As I explained in connection with Aetna's privilege claims, I am of the view that the attorney-client and work product privileges cannot be raised against an assignee by the assignor where a purported global assignment of claims arising from an event has transpired. This is just as true in the context of the Starrs' representation of Jorge as it is in the insurance company context in which the insurer and the insured share a common interest.

Of course, plaintiffs must be seeking these documents in this litigation because of their potential relevance to the claims against Aetna. If plaintiffs were seeking the case files

for any other purpose, such as to harass the Starrs, the *subpoena duces tecum* would be inappropriate and the Starrs could seek a protective order. However, the discovery standard is very broad; material is discoverable if it "appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). I conclude that plaintiffs are entitled to the case files because the Starrs cannot claim a privilege against Tommy, Jorge's assignee, and because of their potential relevance to this litigation and the plaintiffs' claims against Aetna. I will, therefore, order their production. *See* Fed. R.Civ.P. 45(c)(2)(B).

In the pleadings regarding the documents in the Starrs' possession, there was squabbling about how the document production would be implemented. In the interest of precluding further disagreement, I will anticipate some of those disagreements and will direct the method for disclosure of documents in the accompanying Order. Additionally, there was a subsequent motion filed regarding which *subpoena duces tecum* was at issue. That motion, entitled *Plaintiffs' Motion that Preliminary Order Be Augmented,* requested that this Court order the Starrs to produce for *in camera* inspection documents in response to the *subpoena duces tecum* issued in Civ. No. 96–2708. Plaintiffs claimed that the documents the Starrs had already produced for review by the Court were responsive only to the *subpoena* issued post-judgment in Civ. No. 89–1222. Be that as it may, the decision of the Court that the Starrs cannot keep privileged information from Tommy renders the motion moot. The Starrs must disgorge *all* documents connected with their representation of Jorge for which they have previously claimed attorney-client or work product privileges. No other, more specific privilege objections to the *subpoenas* were lodged, Fed.R.Civ.P. 45(d); thus, any further objections are deemed waived at this point.

### C. The Motion to Compel Further Deposition Testimony

Plaintiffs seek to compel Irving Starr and Jesus Iglesias to answer questions posed to them in their depositions in this action which they were advised not to answer by Richard Starr on grounds of privilege. Pls. Mot. to Compel Starrs, Ex. 24 and 25. Plaintiffs have not yet conducted Jorge's deposition in this case pending the outcome of their motion to have the Starrs disqualified.

I will grant plaintiffs' motion to compel further deposition testimony of Irving Starr and Jesus Iglesias. *See* Fed.R.Civ.P. 37(a)(1) and (a)(2)(A), 26(a)(5), 45(a)(1)(C). As discussed above, Irving Starr cannot claim attorney-client or work product privileges against Tommy, Jorge's assignee, who is now the holder of the privilege. Just as he cannot avoid production of documents relating to his representation of Jorge, he cannot avoid answering deposition questions on grounds of privilege where the inquiry relates to his representation of Jorge. As for Jesus Iglesias, there is no immunity between a parent and a child. *United States v. Duran,* 884 F.Supp. 537, 541 (D.D.C.1995); *United States v. Davies,* 768 F.2d 893, 898 (7th Cir.1985), *cert. denied* 474 U.S. 1008, 106 S.Ct. 533, 88 L.Ed.2d 464 (1985).[10] As a potential witness in this action, he must also answer deposition questions posed to him by plaintiffs' counsel. However, to avoid a breakdown in the depositions similar to that which was recounted in the pleadings and evident from the transcripts, I will preside over the depositions and rule on any objections as they arise. Likewise, Jorge's deposition will be conducted before me. The Order accompanying this Memorandum will set forth the procedure for conducting these examinations.

### II. Sanctions

#### A. Rule 37(a)(4)(A) Sanctions Against Aetna and the Starrs

In addition to disqualification of the Starrs, plaintiffs seek other monetary sanctions, pursuant to Fed.R.Civ.P. 37(a)(4)(A), for the Starrs' "stonewalling" of discovery requests and for refusal to answer deposition testimo-

---

**10.** There is also no parent-child immunity recognized under District of Columbia law. *See* 4A D.C.Code Ann. § 14–301 *et seq.* (1995) (Chapter 3 of Title 14 concerns competency of witnesses and does not include a parent-child privilege).

ny based on what plaintiffs contend is an improper, even bad faith, claim of attorney-client and work product privileges.[11] Plaintiffs also seek Rule 37 sanctions against Aetna.

I will permit the parties to brief the issue of Rule 37 sanctions pursuant to this Memorandum Opinion and accompanying Order. Thereafter, I will rule on the propriety of awarding expenses, and, if necessary, the prevailing party will be provided with an opportunity to submit a declaration as to expenses and attorney's fees incurred in bringing the motions.

## B. Disqualification of the Starrs

■ Plaintiffs seek disqualification, of the Starrs, as well as monetary sanctions, as punitive measures for what plaintiffs call "bad faith, vexatious misconduct, and abuse of the judicial process." Pls. Mot. to Compel Starrs at 1. Plaintiffs accuse the Starrs of various conflicts of interest in their representation of Jorge, of contumaciously interfering with plaintiffs' discovery, of abusing bankruptcy laws, and of engaging in misrepresentations to plaintiffs and to the Court. Id. at 2–3.

What complicates much of this current litigation is that plaintiffs must proceed on a theory of injury to Tommy's rights, not directly, but as derivative of Jorge's. This Court stayed the deposition of Jorge in this action on plaintiffs' claim that an impermissible conflict between the Starr law firm and Jorge exists. Plaintiffs argue it is based on the interest the Starrs have in protecting themselves from a malpractice action stemming from their representation of Jorge in the underlying tort action. However, Jorge would not be bringing the malpractice action. Rather, Tommy succeeded to whatever right Jorge had to accuse Irving Starr of malpractice in the manner in which it represented him. The potential of such a malpractice action, in Tommy's view, renders the Starr firm incapable of continuing the representation of Jorge.

Among other actions by Irving Starr giving rise to professional negligence liability, plaintiffs argue that Starr's failure to settle the claims against Jorge by assigning all his chose-in-action rights to Tommy before trial injured Jorge. In other words, Starr went to trial and lost, causing a $5.5 million judgment to be entered against Jorge, in order to protect himself from a malpractice action which he was sure would have followed any assignment of rights by Jorge to Tommy. By then, plaintiffs argue, Starr had already failed to remove the Superior Court actions to the District Court where the action against Jorge was pending, had already failed effectively to oppose or appeal the granting of summary judgment in favor of Aetna and GEICO in the Superior Court, and had failed to make use of a favorable North Carolina state court case in which Aetna was a party and which involved the same permissive-use exclusion at issue here.

As for their conduct during discovery, taking plaintiffs' accusations as true, the Starrs' refusal to turn over their case files and their objections to certain deposition testimony do not demonstrate conclusively to me their bad faith during discovery because there is some authority for their position. However, as noted above, the parties will have the opportunity to address Rule 37(a)(4)(A) sanctions after the issuance of this Memorandum Opinion. At that time, all parties will have the opportunity to argue that the Starrs' position was or was not substantially justified. *See* Fed.R.Civ.P. 37(a)(4)(A).

As for the overriding conflict of interest between Jorge and the Starrs, warranting their disqualification, I will reject the plaintiffs' suggestion that disqualification is either necessary or appropriate. The Starrs are not parties, nor are they representing parties, to this litigation. Jorge has been through a trial and is only before this Court as a witness, albeit a material one. Interfering with his right to retain the counsel of his choice is not something a court should do absent a conflict so severe that not even independent advice of counsel and consent to the representation in spite of the conflict will

---

11. Discovery sanctions against non-parties are available under the Federal Rules. *See* Fed.

R.Civ.P. 37(a)(1) and (a)(2)(A), 26(a)(5), 45(a)(1)(C), and 37(a)(4)(A).

cure it. This is especially true since Jorge has been represented by the Starr firm for more than ten years now and has most certainly established a relationship of trust with the Starrs. Because I will order Jorge's deposition to occur before me, as well as the depositions of Jesus Iglesias and Irving Starr, Jorge's interests will be protected by my ruling on any objections raised by the Starrs and advising Jorge of any potential conflicts in their representation of him. Thus, I conclude that disqualification of the Starrs at this point in Jorge's involvement with this litigation is unnecessary.

Furthermore, Tommy will not be prejudiced by the Starrs continued representation of Jorge. By the accompanying Order, the Starrs will be turning over to Tommy's counsel all of the documents for which they claim attorney-client privilege. Once those documents are provided to Tommy, and Jorge's deposition testimony is taken, I cannot foresee the potential of any harm to Tommy or his rights under the assignment.

### C. Civil Contempt Proceedings Against the Starrs

The basis of plaintiffs' motion for an order directing the Starrs to show cause why they should not be found in civil contempt is the Starrs' alleged violation of Judge Greene's orders of March 5 and 14, and November 8, 1996, freezing Jorge's chose-in-action assets. The March 5 Order granted plaintiffs' motion for a TRO freezing these assets, and the March 14 Order directed that the injunction remain in place until the end of the trial proceedings. After the bench trial, Judge Greene issued the November 8 Order entering judgment for the plaintiffs and ordering Jorge to assign those chose-in-action assets to Tommy.

Plaintiffs argue that Irving Starr violated those Orders by causing Jorge to execute an affidavit in August 1997 swearing to the fact that he knew he had taken the Rivas's car without permission. Pls. Mot. to Compel Starrs at 17–18. Plaintiffs allege that this declaration contradicted representations made in Jorge's Answer filed in Superior Court in the declaratory judgment actions. The gist of plaintiffs' argument, as I see it, is

that the Starrs and Aetna at some point colluded, conspiring to "mutilate" Tommy's rights conveyed by Jorge pursuant to this Court's Order. By advising Jorge to so state, Starr was protecting himself from a potential malpractice action. Pls. Mot. to Compel Starrs at 17. Moreover, plaintiffs contend, the Starrs have violated the Court's Orders by not turning over to Tommy the files relating to their representation of Jorge in the prior lawsuit. By standing in Jorge's shoes, they argue, Tommy succeeds in all respects to Jorge's privileged relationship with the Starrs. Where they could not assert attorney-client or work product privileges against Jorge, they cannot assert them against Tommy. Their doing so, plaintiffs argue, is in bad faith and should be grounds for holding the Starrs in contempt.

### 1. Jurisdiction of the Magistrate Judge

■ Before reaching the merits of the motion, it is necessary to address the question of the jurisdiction of this Court to resolve this motion. United States magistrate judges do not have jurisdiction to exercise the contempt power of the district court. 28 U.S.C. § 636(e). Pursuant to the statute which delineates magistrate judges' jurisdiction, they are required to certify to the district judge any facts constituting contemptuous conduct, such as disobeying a court order, even when it occurs "[i]n a proceeding before a magistrate." *Id.* Magistrate judges may also order the party to show cause why he or she should not be held in contempt at a hearing before a district judge. The district judge thereafter adjudicates contempt in a summary fashion. *Id.* The statute does not distinguish between civil and criminal contempt; thus, a plain reading of it suggests that magistrate judges have neither civil nor criminal contempt power. *See Stotts v. Quinlan,* 139 F.R.D. 321, 323 (E.D.N.C.1991). *Compare Miami Valley Carpenters Dist. Council Pension Fund v. Scheckelhoff,* 123 F.R.D. 263, 268 (S.D.Ohio 1988) (holding that § 636(e) does not prevent exercise of civil contempt jurisdiction in a full consent proceeding before a magistrate).

In this case, the plaintiffs' motion is for an order directing the Starrs to show cause why they should not be held in civil contempt. In other words, the plaintiffs implore the Court to begin contempt proceedings against the Starrs. Magistrate judges have authority under 636(e) to order a party to show cause before the district judge "[u]pon the commission of any such [contemptuous] act or conduct." In other words, the magistrate judge has authority to begin the contempt proceedings even if he does not have jurisdiction to adjudicate contempt. It is entirely consistent with 636(e) that the magistrate judge exercise discretion in deciding whether conduct has risen to the level at which he or she must certify the facts of the conduct to a district judge for adjudication. *Stotts*, 139 F.R.D. at 324 ("The statute requires initially a decision by the magistrate judge to determine whether or not acts have been committed which constitute contempt."); *In re Kitterman*, 696 F.Supp. 1366, 1368–1369 (D.Nev.1988) ("The magistrate ... initiates the process by certifying to the district judge the facts which may constitute contempt and by issuing an order that the person whose behavior is at issue show cause before the district judge why he should not be adjudged in contempt."). *But see Nat'l Labor Relations Board v. A–Plus Roofing, Inc.*, 39 F.3d 1410, 1417 (9th Cir.1994). Indeed, "the jurisdiction to take these acts is statutorily mandated and does not [even] depend upon consent of the parties." *Stotts*, 139 F.R.D. at 324. Since resolution of the motion would not impose contempt sanctions against a party, but is an exercise of my discretion to initiate contempt proceedings, I will rule on plaintiffs' motion and deny it.

### 2. Civil Contempt Proceedings Unwarranted

The purpose of civil contempt is coercive or remedial and primarily for the benefit of the complaining litigants. *Internat'l Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994). Plaintiffs argue that the contemptuous conduct by the Starrs—advising Jorge to execute the affidavit and not turning over the files of their representation of him—warrant civil contempt, but the facts that they allege do not show that the Starrs violated any explicit order of the Court. In its November 8, 1996, Order of Judgment, the Court directed Jorge to assign his chose in action assets to the plaintiffs. He did so in May 1997. The language of the Order did not specifically require the Starrs or Jorge to turn over the case files, nor did it prohibit Jorge from executing such an affidavit or the Starrs, his attorneys, from assisting him in doing so.

Plaintiffs' argument seems to be that the Starrs' actions rendered that assignment worthless and, therefore, they violated the spirit of the Order. However, the standard for Judge Greene to find the Starrs in contempt is high: he must find clear and convincing proof that they violated a clear and unambiguous order. Wright, Miller, & Kane, *Federal Practice and Procedure* § 2960. While the November 8 Order was unambiguous as to the necessity that Jorge make the assignment to Tommy, it did not address the issue of malpractice actions explicitly,[12] thereby making access to Jorge's case files more clearly discoverable. As discussed above, the issue of whether a global assignment of rights encompasses the right to access privileged information is not a legally crystal clear proposition. In any event, this action does not assert legal malpractice claims against the Starrs; it asserts various claims of breach and bad faith against Aetna. Therefore, the question of whether the assignment encompassed a malpractice action against the Starrs is not relevant at this point. Regardless of the answer to that question, I do not find that the Starrs' claims of attorney-client privilege in this action against Aetna were so farfetched, or their assistance to Jorge in his affidavit so obviously prohibited, as to raise even a *prima facie* case of violating Judge Greene's Order. *Id.*

Significantly, there is an additional reason for declining to issue the order to show cause. Once plaintiffs gain access to the information for which the Starrs claim a privilege, both case files and deposition testimo-

---

12. In fact, that is a point of contention between the parties.

ny, as they will pursuant to this Opinion and accompanying Order, the need for coercive civil contempt sanctions is obviated.

## CONCLUSION

For the foregoing reasons, the plaintiffs' motion to compel Aetna to produce documents requested in its First Request for Production of Documents is granted in part and denied in part. Aetna shall show cause why it should not pay plaintiffs' reasonable expenses in bringing the motion. Plaintiffs' motion to compel the Starrs to produce documents and for further deposition testimony is granted. The Starrs shall show cause why they should not pay the plaintiffs' reasonable expenses in bringing the motion to compel. Plaintiffs' motion for disqualification of the Starrs and motion for an order directing the Starrs to show cause why they should not be held in civil contempt are denied. An order setting forth directions to counsel for complying with the Court's instructions is issued herewith.

## ORDER

Upon consideration of plaintiffs' motions, defendant's and the non-parties' oppositions thereto, the entire record herein, and in accordance with the accompanying Memorandum Opinion, it is hereby

**ORDERED** that *Plaintiffs' Motion to Compel Defendant Aetna to Produce and Permit Inspection and Copying of Documents Specified in Plaintiffs' First Request for Production of Documents and for Assessment of Expenses Incurred and Attorneys' Fees* [# 31] is **GRANTED IN PART** and **DENIED IN PART** in the following manner:

1. As to Requests for Production Nos. 1, 2, 4, 5, 6, 7, 8, 9, 10, 11, 12, 14, 19, plaintiffs' motion to compel is **GRANTED**;

2. As to Requests for Production Nos. 3, 13, 15, 16, 17, 18, plaintiffs' motion to compel is **DENIED**;

3. Defendant shall make these documents available to plaintiffs by August 14, 1998;

4. Plaintiffs' motion for discovery sanctions against defendant is **HELD IN ABEYANCE** pending further briefing pursuant to the following schedule: defendant shall show cause why the plaintiffs should not be awarded their reasonable expenses in bringing the motion to compel by August 14, 1998. Plaintiffs shall respond by August 28, 1998, and defendant may reply by September 4, 1998. It is further

**ORDERED** that *Plaintiffs' Motion for an Order to Show Cause Why Certain Nonparties Should Not Be Found in Civil Contempt, To Sanction Attorney Misconduct by an Award of Fees and Expenses and by Disqualification as Counsel, To Compel the Production of Documents and Records as Heretofore Commanded by Subpoena, and To Compel Answers to Deposition Questions* [# 28] is **GRANTED IN PART** and **DENIED IN PART** in the following manner:

1. Plaintiffs' motion to compel document production is **GRANTED**. The Starrs shall make available for inspection and copying *all* the documents responsive to the *subpoena duces tecum* issued in Civ. No. 96–2708 by August 14, 1998, at their offices. Pursuant to Fed. R.Civ.P. 45(c)(2)(B) and (d)(1), the Starrs shall provide the files to plaintiffs, and to Aetna, if Aetna so desires, as they are kept in the normal course of business. Plaintiffs shall pay the Starrs the reasonable expense of utilizing the Starrs' on-site photocopying machine. If there is no such on-site copying machine, the plaintiffs shall designate the documents of which they desire copies and the Starrs, or plaintiffs, if the Starrs permit, shall deliver those documents to a commercial copier for duplication. Plaintiffs shall pay the cost of the duplication. If Aetna desires copies of any of the documents, it shall bear its portion of the duplication cost, in the foregoing manner, as well. If plaintiffs desire bates stamping, plaintiffs shall arrange to have the original documents bates stamped by August 14, 1998. Plaintiffs shall bear the total cost of the bates stamping unless Aetna intends to seek discovery of these documents at any point. In

that case, plaintiffs and defendant shall share equally the cost of bates stamping;

2. Plaintiffs' motion to compel further deposition testimony of Jesus Iglesias and Irving Starr is **GRANTED**. Those depositions, as well as the deposition of Jorge Iglesias, shall be conducted before me on August 28, 1998, in Courtroom 26. The plaintiffs shall arrange for the court reporter to attend the depositions.

3. Plaintiffs' motion for disqualification of the Starrs is **DENIED**;

4. Plaintiffs' motion for an order directing the Starrs to show cause why they should not be held in civil contempt is **DENIED**;

5. Plaintiff's motion for discovery sanctions against the Starrs is **HELD IN ABEYANCE** pending further briefing pursuant to the following schedule: the Starrs shall show cause why the plaintiffs should not be awarded their reasonable expenses in bringing the motion to compel by September 11, 1998. Plaintiffs shall respond by September 25, 1998, and the Starrs may reply by October 2, 1998. It is further

**ORDERED** that *Plaintiffs' Motion that Preliminary Order be Augmented* [# 54] is **DENIED AS MOOT**.

SO ORDERED.

